William **TURNER**, Plaintiff and Appellant,

v.

**HI–COUNTRY HOMEOWNERS ASSO-CIATION, a Utah corporation, De-fendant and Appellee.**

No. 940476.

Supreme Court of Utah.

Jan. 26, 1996.

Wesley F. Sine, Salt Lake City, for plaintiff and appellant.

A. Howard Lundgren, Salt Lake City, for defendant and appellee.

DURHAM, Justice:

Plaintiff William Turner appeals from the district court's grant of summary judgment in favor of defendant Hi–Country Homeowners Association (Hi–Country). We affirm.

The dispositive facts are undisputed. Hi–Country is a Utah nonprofit corporation organized in 1973 pursuant to the Utah Nonprofit Corporation and Co-operative Association Act, Utah Code Ann. §§ 16–6–18 to –112. According to Hi–Country's articles of incorporation, every person who owns a lot within the subdivision "shall be a member of the Association" and is entitled to vote on Association matters. Hi–Country provides services to its members, including a controlled security gate, garbage removal, mail pick-up and delivery, snow removal, bridle paths, and the water system. To provide for these services, members are charged periodic assessments.

Turner joined Hi–Country when he purchased lot 75 in 1973 and subsequently became a member of Hi–Country's Board of Directors. In 1989, Turner purchased a second lot, lot 1, in the Hi–Country Estates Subdivision. Lot 1 is located outside the controlled security gate and has been since the gate's construction in 1972. Since his acquisition of lot 1, Turner, as the owner of two lots, has exercised two votes at all Hi–Country membership meetings.

In 1991, Hi–Country made a special gate repair assessment of $50 on each lot. Although Turner had paid all prior assessments on lot 1, he argued that because the gate provided him no benefit, he should not be required to pay for its repair. Hi–Country sued Turner in small claims court, seeking payment of the $50 fee. The small claims court found in favor of Turner, checking the box on its judgment form marked "No Cause of Action."[1]

Following his success in small claims court, Turner filed the present suit, seeking, in part, an order restraining Hi–Country from assessing lot 1 for services he does not or cannot use and a judgment in the amount of $1,635.23 representing assessments Turner previously paid to Hi–Country for these same unused services.[2] Turner complained that lot 1 receives no benefit from the security gate and does not require most of the other services Hi–Country provides its members: the county maintains the road in front of lot 1, the mail is delivered directly to lot 1, and the garbage left in front of lot 1 is collected via the county road. Although Turner could rely on Hi–Country to provide these services, lot 1's location outside the security gate makes doing so inconvenient. The district court, however, entered summary judgment in favor of Hi–Country, finding no legal grounds to support Turner's claim.

Turner now appeals, raising essentially two issues. First, he asserts that Hi–Coun-

1. A small claims court is not a court of record in Utah. Utah Code Ann. § 78–1–1(2). The small claims court provided no findings of fact or conclusions of law supporting its judgment.

2. In the alternative, Turner requested either an order requiring Hi–Country to remove the security gate, thereby including lot 1 within the visible boundary of the subdivision, or an order requiring that lot 1 be removed from the subdivision altogether.

try has a written agreement with each of its lot owners to provide certain services and, because lot 1 is outside the security gate and does not benefit from these services, Hi–Country has effectively breached its agreement with him. He acknowledges that lot 1 should be assessed for the services he uses, such as the water system, but notes that he receives no benefit from many of the other services. Second, Turner asserts that the 1991 small claims court decision should preclude Hi–Country from litigating the issue of whether he may be assessed for services he does not or cannot use.

■ Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Accordingly, we review the district court's grant of summary judgment for correctness, affording no special deference to the court's legal conclusions.

## BREACH OF CONTRACT

■ "It is well established precedent that the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's application, constitute a contract between the member and the corporation." *Appeal of Two Crow Ranch, Inc.,* 159 Mont. 16, 494 P.2d 915, 919 (1972); *see also Rowland v. Union Hills Country Club,* 157 Ariz. 301, 757 P.2d 105, 108 (Ct.App.1988) (an organization's articles of incorporation and bylaws constitute a contract between the organization and its members); *Jorgensen Realty, Inc. v. Box,* 701 P.2d 1256, 1257 (Colo.Ct.App.1985) ("The relationship between a voluntary association and its members is a contractual one...."); *First Fed. Sav. & Loan v. East End Mut. Elec. Co.,* 112 Idaho 762, 735 P.2d 1073, 1075 (Ct.App. 1987) (bylaws are binding as a contract among members of cooperative). Turner does not dispute that his ownership of lot 1 makes him a member of Hi–Country, nor does he dispute that Hi–Country's articles of incorporation and bylaws contain the controlling terms of the contractual relationship between Hi–Country and him. He likewise does not dispute that Hi–Country's articles of incorporation and bylaws constitute a

proper and legal basis for Hi–Country's assessments against him and the other members of the Association. He simply argues that by assessing him at the same rate as other members while not providing him the same services, Hi–Country has breached its contract with him. In addition, Turner cites language from an amendment to Hi–Country's bylaws which he argues precludes Hi–Country from assessing lot 1:

> At such time as any public body shall undertake to maintain the roads and streets and provide the other services contemplated herein, this covenant shall cease, terminate, and be held for naught.

Turner states that this clause should apply to each individual lot rather than to the subdivision as a whole and argues that because the county maintains the road and collects the garbage in front of lot 1, he is not contractually required to pay assessments for these services.

Hi–Country, on the other hand, points out that with the exception of the security gate, Turner has full access to the services Hi–Country provides its members, including the right to vote on Association matters. Hi–Country further notes that when Turner purchased lot 1, he was aware of its location outside the security gate and also of his obligation to pay assessments. Hi–Country's position is that Turner, as a member of the Association, has a contractual obligation to pay for *all* of the services Hi–Country provides its members, not simply for those he chooses to use. In support of this position, Hi–Country cites the following language from its bylaws:

> [E]ach member is obligated to pay to the Association annual and special assessments which are secured by a continuing lien upon the property against which the assessment is made.... *No owner may waive or otherwise escape liability for the assessment provided for herein by non-use of the common area, roads, or abandonment of his Lot.*

(Emphasis added.)

■ We agree with Hi–Country. In the interpretation of a contract, the parties' intentions are controlling. *Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991). If the

contract is in writing and its language is not ambiguous, the parties' intentions should be determined from the words of the agreement. *Id.* Applying the standard, we hold that the contract between Hi–Country and Turner is not ambiguous. Under the terms of the contract, Hi–Country provides an indivisible "bundle" of services to Association members. In return, members are required to pay the assessments Hi–Country places on subdivision lots. The contract specifically states that a lot owner who does not use a service must still pay for that service. Indeed, such a blanket contractual provision makes sense in the context of a voluntary homeowners association. Allowing members to pay for only the services they use could result in complicated bookkeeping and numerous disputes similar to the present one.

Furthermore, we conclude that the language Turner cites from the amended bylaw, when read in its proper context, does not release him from his contractual obligation to pay assessments on lot 1. The sentence Turner cites is located within the bylaw which gives Hi–Country the authority to assess members for services. The bylaw states that each lot owner is responsible to pay annually

> his pro-rata share of the costs to maintain the roads, streets and common areas, including but not limited to, the common areas set aside for the delivery and pickup of mail, the pickup of children for school by school buses and other vehicles, and an area for garbage collection ... and for such other services as are deemed important to the development and preservation of an attractive community and to further maintain the privacy and general safety of the residential communities located in Hi–Country Estates.

The language of the bylaw speaks to the services Hi–Country provides its membership community as a whole. Viewed in this context, it is apparent that the contract between Hi–Country and its members will ter-

minate when a "public body shall undertake to maintain the roads and streets and provide the other services" for the *entire subdivision,* not simply when a public body provides some duplicate services to a single lot.

Thus, we conclude that although Turner does not benefit from some of the services Hi–Country provides its members,[3] the terms of the written contract still require him to pay the full assessment.[4]

## ISSUE PRECLUSION

Turner next asserts that the 1991 small claims court decision between the parties should preclude Hi–Country from litigating the issue of whether it may assess Turner for services he does not or cannot use. Turner states that even though a small claims court is not a court of record in Utah, we "must assume" from the small claims court's finding of "No Cause of Action" that the issue of whether Turner may be assessed for unused services was fully and fairly litigated. Hi–Country, however, argues that the lack of specific evidence reflecting the actual issues litigated precludes Turner from asserting the doctrine of issue preclusion.

Issue preclusion prevents the relitigation of issues previously determined in a prior proceeding. *Hill v. Seattle First Nat'l Bank,* 827 P.2d 241, 245 (Utah 1992). The party attempting to assert issue preclusion must demonstrate four elements: (1) that the issue in both cases is identical; (2) that the judgment in the first action was final with respect to that issue; (3) that the issue was fully, fairly, and competently litigated in the first action; and (4) that the party who is precluded from litigating the issue was either a party to the first action or a privy of a party. *Sevy v. Security Title Co.,* 902 P.2d 629, 632 (Utah 1995); *Timm v. Dewsnup,* 851 P.2d 1178, 1184 (Utah 1993). "If any one of these requirements is not satisfied, there can be no issue preclusion." *Hill,* 827 P.2d at 245.

We conclude that the absence of a court record or other specific evidence con-

---

3. We recognize that requiring Turner to pay for a security gate which provides him no benefit creates a seemingly harsh result. However, as Turner admits, he was fully aware of the gate's location prior to his purchase of lot 1.

4. In his brief, Turner also argues that Hi–Country owes him a fiduciary duty under principles of corporate law. Because we conclude that the relationship between Turner and Hi–Country is contractual, we do not address this argument.

cerning the scope of the prior proceeding prevents us from determining whether these four requirements have been met in the present case.[5] *See Timm*, 851 P.2d at 1184 (holding that where there are no findings of fact or other specific evidence of the prior court's determination of the issue, there can be no issue preclusion). In particular, we cannot determine whether the issue in the prior case was identical to the present issue and whether the issue was fully, fairly, and competently litigated. Accordingly, we hold that Turner may not rely on the doctrine of issue preclusion to bar Hi–Country from litigating the issue of whether it may assess Turner for individual services he does not or cannot use.

The decision of the district court is affirmed.

ZIMMERMAN, C.J., and HOWE and RUSSON, JJ., concur.

STEWART, Associate C.J., concurs in the result.

---

**5.** The only information either side has pointed to concerning the substance of the small claims court proceeding is the 1991 affidavit of Kenneth Smith, an officer of Hi–Country. In the affidavit presented to the small claims court, Smith stated that Turner owed Hi–Country $50 "[for] a special gate repair assessment on property located at 13300 So. 7370 W., Riverton."