1999 UT 30

**H. Ross WORKMAN, Plaintiff and Appellant,**

v.

**BRIGHTON PROPERTIES, INC., Henry D. Moyle, Richard Moyle Marsh, James H. Moyle, II, David D. Creer, Linda N. Burbidge, Karin N. Brown, Adrienne L. Aldous, Allan Murphy, Christopher M. Madsen, Elizabeth M. Greer, Suzanne M. Scott, Gilbert D. Moyle, Marie M. Wangeman, John R. Moyle, James Light, Dorian L. Shaw, Tmar, Ltd., Sally Grant, Alice C. Young, Caroline C. Pinney, Helen Claire Moyle Jones, Janet M. Nielson, Scott R. Madson, and Tippyune, Inc., Defendants and Appellees.**

No. 980056.

Supreme Court of Utah.

April 2, 1999.

Thomas R. Vuksinick, Salt Lake City, for plaintiff.

Paul D. Veasy, Salt Lake City, for defendants.

ZIMMERMAN, Justice:

¶1 H. Ross Workman ("Workman") sued to prevent Brighton Properties, Inc. ("Brighton") from levying an assessment against him for purposes of developing a water system in Silver Lake Estates Subdivision No. 1 that did not benefit Workman's property in Silver Lake Estates Subdivision No. 2, and to invalidate a $300 assessment made against him for costs relating to a study of the water system within all of Silver Lake Estates. The district court denied Workman's motion for summary judgment, and effectively granted *sua sponte* judgment for Brighton, concluding that Brighton was authorized, pursuant to its bylaws and restrictive covenants, to levy assessments against Workman and that the $300 assessment was valid. We affirm.

¶2 The parties to this appeal do not contend that there are any factual disputes. The only question, therefore, is whether, as a matter of law, the trial judge was correct in granting judgment for Brighton. As to legal questions, "[w]e review the trial court's conclusions for correctness, granting them no deference." *Lopez v. Union Pac. R.R. Co.*, 932 P.2d 601, 603 (Utah 1997) (citation omitted); *see also State v. Pena*, 869 P.2d 932, 936 (Utah 1994) ("Controlling Utah case law teaches that 'correctness' means the appellate court decides the matter for itself and

does not defer in any degree to the trial judge's determination of law." (citation omitted)).

¶ 3 We first recite the facts. Silver Lake Estates consists of two noncontiguous subdivisions located about one mile apart in the Brighton area of Big Cottonwood Canyon in the Wasatch mountain range. Subdivision No. 1 is made up of thirty-one lots, and Subdivision No. 2 is made up of ten lots. Brighton is a non-profit corporation originally formed in 1974 to provide services to the owners of Silver Lake Estates No. 1 and No. 2. The shareholders of Brighton are the owners of lots in Silver Lake Estates. Each lot owner, other than Brighton itself or a governmental agency, is issued one share of stock. Both subdivisions are governed by a single set of documents including articles of incorporation, bylaws, and restrictive covenants.

¶ 4 In August of 1986, Workman and his wife entered into an agreement to purchase lot three in Silver Lake Estates No. 2. This agreement provided that purchase of the property was "subject to any restrictive covenants." In October of 1986, lot three was conveyed to Workman and his wife by a warranty deed "subject to," among other things, "[c]ovenants, [c]onditions, [r]estrictions[,] [r]ights of [w]ay, [e]asements and [r]eservations of record or enforceable in law or equity." A short time thereafter, Workman and his wife were issued a certificate for one share of stock in Brighton.

¶ 5 In August of 1996, Brighton notified all owners of a $300 assessment to fund an engineering feasibility study to be conducted on Brighton's water source and distribution system. Workman refused to pay the assessment, and on November 12, 1996, filed a complaint against Brighton in Third District Court, seeking declaratory and injunctive relief. Workman alleged that the assessment was for the purpose of evaluating the feasibility of making improvements in the water system that would exclusively benefit Silver Lake Estates No. 1. He asserted that Brighton had no authority to make an assessment that did not benefit a party against whom the assessment was made. Workman moved for

summary judgment. The district court denied Workman's summary judgment motion and *sua sponte* entered judgment in favor of Brighton. Workman now appeals.

¶ 6 The determinative issue on appeal is whether the district court correctly held that Brighton could properly levy the $300 assessment against Workman. Workman makes a number of arguments, but they all involve the claim that the assessment is not within Brighton's power. Brighton responds that the governing documents permit the assessment, and, therefore, the district court's decision should be upheld.

¶ 7 We begin with the relevant documents. Article III of Brighton's articles of incorporation sets out the purposes of the corporation, including the development of water for the "two subdivisions":

The purposes for which this corporation is organized as a non-profit corporation are . . .

1. To own water rights and to engage in water development, diversion, storage, distribution and/or use for the benefit of two subdivisions . . . known as Silver Lake Estates Subdivision # 1 and Silver Lake Estates Subdivision # 2.

2. To engage in . . . improvements. . . .

3. To do all and everything necessary, suitable and proper for the accomplishment of the purposes or attainment of the objects hereinabove set forth. . . .

Article V, of the articles of incorporation, provides that stock in the corporation "shall have one vote per share, and *shall be subject to such assessment as may from time to time be levied by the Board of Trustees.*" (Emphasis added.)

¶ 8 Article VIII of Brighton's bylaws elaborates on the power to assess:

Pursuant to Article V of the Articles of Incorporation of the corporation, from time to time as the board of trustees direct, each issued and outstanding share of stock of the corporation shall be assessed such amounts as the board determines necessary to carry out the purposes for which the corporation was organized. Failure to promptly pay any assessment when due

shall constitute a lien against the applicable share of the corporation. The corporation may enforce payment of said assessment by denial of the right to use water owned and controlled by the corporation.

¶ 9 Workman's warranty deed is subject to "any restrictive covenants." Section 15 of Brighton's restrictive covenants addresses in even greater detail the relationship between assessments and water development:

> To construct, maintain and improve water system, drainage, private streets, roads, general planning and all common community services within the two subdivisions for the general benefit of all the lot owners, every lot owner, in accepting a deed or contract for the purchase of any lot, agrees to acquire the former owner's membership in [Brighton], a Utah nonprofit corporation, and shall become a member (shareholder) of and be subject to the obligations and regulations of said corporation, and agrees to pay assessments as ordered by the Board of Trustees of [Brighton]. Such assessment shall be paid promptly when it becomes due and in the event of failure of an owner to pay such an assessment promptly when due, for which the owner shall be personally liable, the amount of the unpaid assessment shall constitute a lien upon the lot owned by said owner, as well as a lien against the share of [Brighton]. The corporation may enforce payment of said assessment of denial of the right to use water owned and controlled by [Brighton]. Said lien may be enforced in equity, as would a real estate mortgage lien foreclosure, by [Brighton]. The foreclosure judgment shall award to [Brighton] reasonable attorneys' fees and court costs incurred in connection with the foreclosure.

■ ¶ 10 The binding nature of these article, bylaw, and covenant provisions is settled under Utah law. " 'It is well established precedent that the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's application, constitute a contract between the member and the corporation.' " *Turner v. Hi–Country Homeowners Ass'n,* 910 P.2d 1223, 1225 (Utah 1996) (citation omitted). Similarly, recorded restrictive covenants are enforceable against property owners who purchased land "subject to" those covenants. *Fink v. Miller,* 896 P.2d 649, 652 (Utah Ct.App.1995).

■ ¶ 11 Workman does not dispute that his ownership of lot three makes him a member of Brighton, nor does he dispute that Brighton's bylaws, articles of incorporation, and restrictive covenants contain the controlling terms of his contractual relationship with Brighton. He argues, however, that under the restrictive covenants, Brighton can levy an assessment against him only if his lot will receive a benefit from the expenditure. To support his assertion, Workman relies on one phrase in Section 15 of the restrictive covenants which states that water and other improvements "[are] for the general benefit of all the lot owners." Workman argues that under this clause, all assessments must "benefit all the lot owners" including Workman, and the assessment in question does not.

¶ 12 Brighton responds that because of the physical separation of the two subdivisions, it was necessarily contemplated that not every improvement in each subdivision would provide a specific benefit to every lot owner in both subdivisions, and there is nothing in any of the provisions relied on by Workman that so requires. We agree. Neither the covenants nor our case law supports Workman's claim.

¶ 13 First, the various provisions in question clearly contemplate improvements within both subdivisions, but not necessarily improvements that benefit both at once. Indeed, it is hard to imagine very many improvements that, if efficiently planned and undertaken, would simultaneously benefit two physically separate subdivisions. Second, the "general benefit" language of Section 15 of the restrictive covenants is only part of an introductory clause describing in general terms the reasons for the express membership and assessment requirements that follow. It certainly is not limiting as to those clear requirements.

■ ¶ 14 Beyond the language of the various provisions, Workman's fundamental position is that, despite what the documents pro-

vide, it is fundamentally inequitable to assess an owner for a service that does not directly benefit his or her property. Our case law, however, is to the contrary. In *Turner v. Hi–Country Homeowners Ass'n*, we held that a homeowners association could assess a landowner for a security gate even though the landowner received no benefit in return because the governing documents, including articles of incorporation, were clear and unambiguous. 910 P.2d 1223, 1226 (Utah 1996). As we stated in *Turner*, allowing members to pay only for the services from which they directly benefit could result in complicated bookkeeping and numerous disputes such as the present one. *See id.* In addition, such a requirement creates the realistic prospect, highlighted in the present case, of projects that are gerrymandered only to meet some artificial benefit requirement. We concluded in *Turner*, and we reaffirm here, that although the landowner did not benefit from the assessment, the terms of the governing documents still require him to pay the full assessment. *See id.*

¶ 15 Moreover, we note that there has been no showing of an overriding inequity in Brighton's treatment of Workman. Workman was fully aware of his obligation to pay assessments by reason of his purchase agreement as well as his deed. And there is nothing in the record to indicate that over time, the officers of Brighton have abused their authority or otherwise systematically used the power of assessment to disproportionately benefit a specific group of lot owners to the long-term detriment of the rest.

¶ 16 Thus, we conclude that although Workman may not directly benefit from the assessment, the terms of Brighton's articles of incorporation, bylaws, and restrictive covenants require him to pay the assessment.

¶ 17 Affirmed.

¶ 18 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice RUSSON, and Judge DAVIS concur.

¶ 19 Having disqualified himself, Justice STEWART does not participate herein; District Judge LYNN W. DAVIS sat.