1999 UT 93

**Gayle S. PETERSEN d/b/a Leather and Lace, Plaintiff and Appellant,**

v.

**SOUTH SALT LAKE CITY, a municipal corporation, Defendant and Appellee.**

**No. 980109.**

Supreme Court of Utah.

Sept. 24, 1999.

---

W. Andrew McCullough, Orem, for plaintiff.

George D. Knapp, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

¶ 1  The plaintiff, Gayle S. Petersen ("Petersen"), owner of a properly licensed sexually oriented business, filed an action to enjoin the defendant, South Salt Lake City ("the City"), from denying her the right to change the physical location of her business without obtaining a new license, and from denying her the right to locate in a building that was more than 600 feet from the nearest sexually oriented business.  The City moved for summary judgment and Petersen cross-motioned.  The trial court granted summary judgment to the City. It reasoned that Petersen's "business license is transferrable [sic] from one location to another."  However, it also concluded that at the new location, Petersen is subject to "other requirements" of the

sexually oriented business ordinance, specifically the requirement that two such businesses may not be located within 600 feet of each other. While the ordinance failed to specify how the distance is to be measured, the court found that the City was reasonable in measuring the distance from property line to property line. This interpretation operated to bar Petersen from her new location. Petersen appeals that decision and argues that the appropriate standard for measuring 600 feet is from building to building, rather than from property line to property line. We agree and reverse.

¶ 2    We first address the standard of review. On an appeal from a grant of summary judgment, we review the trial court's legal conclusions for correctness and grant them no deference. *See Workman v. Brighton Properties, Inc.,* 976 P.2d 1209, 1210 (Utah 1999) (quotations omitted). We consider the facts in a light most favorable to the party against whom the motion was made. *See A.C. Fin., Inc. v. Salt Lake County,* 948 P.2d 771, 784 (Utah 1997).

¶ 3    Petersen has operated a sexually oriented business, "Leather and Lace," in South Salt Lake City for approximately ten years. In March of 1990, the City passed an ordinance regulating sexually oriented businesses such as Petersen's. Among other things, the ordinance required that each such business be licensed and that it "not be located closer than 500 feet to each other; and not closer than 500 feet to residences, churches or schools." South Salt Lake City, Ut., Ordinance No. 223, 3B–15–6 (Apr. 6, 1990). In December of 1993, the City's distance requirement was increased from 500 feet to 600 feet. And in January of 1996, the ordinance was amended to limit the number of sexually oriented business licenses to one for each 6,000 residents of the City.

¶ 4    Before the enactment of the ordinance, Petersen operated her business at 2480 South Main Street under a lease. She held a business license from the City and was grandparented under the new restrictive ordinance so as to be free of its limitations. In 1996, the property was sold and Petersen's tenancy was terminated. She located a building which was properly zoned for her business and which she believed to be more than 600 feet from any other such business, residence, church, or school. Petersen then notified the City of her plans to transfer her sexually oriented business license to this new location. Shortly after she moved her business, she was notified by the City's attorney that her business license was not transferable and that the new location was not suitable because there was another sexually oriented business within 600 feet.

¶ 5    Petersen then filed an action in Third District Court to enjoin the City from preventing her from operating her business in its new location. The district court denied the injunction. It held that the license was not transferable under the ordinance and the property line of the new premises was less than 600 feet from the property line of another sexually oriented business. The court upheld as reasonable the City's construction of the ordinance that the 600-foot measurement was to be from property line to property line, and not from building to building. Petersen asks that we reverse the district court.

■ ¶ 6    Petersen first contends that there is no prohibition against her transferring her sexually oriented business license from one place to another. She points out that as a matter of course, she was required to obtain two distinct business licenses for operating her business. She was required to maintain a general business license, for which she paid a fee of fifty dollars per year, and a sexually oriented business license. A general business license is required for all businesses operating within the City of South Salt Lake, whereas the sexually oriented business license is an additional licensing requirement for sexually oriented businesses. The general business license requirement was governed by section 3A–1–6 of the City's general business licensing ordinance and the sexually oriented business license was governed by section 3B–15–1 *et seq.* at the time this conflict arose between Petersen and the City.[1] Section 3B–15–1 *et seq.* was a separate

---

1.  These sections are no longer found at 3A and 3B but are found under Title 5. We do not consider Title 5 because that version was enacted after this cause of action arose.

and distinct ordinance specifically addressing sexually oriented businesses. The sexually oriented business license is the license which is at issue in this case. Petersen contends that her sexually oriented business license does not prohibit the transfer of her business from one location to another. The City disagrees.

¶ 7 Section 3B–15–7 of the sexually oriented business ordinance, which was entitled "[b]usiness license required[,]" provided that "[i]t is unlawful for any person to operate a sexually oriented business ... without first obtaining a sexually oriented business license." South Salt Lake City, Ut., Ordinance No. 96–1, 3B–15–7 (Jan. 10, 1996). Section 3B–15–14 of the ordinance, which is entitled "[t]ransfer of ownership of business license prohibited[,]" provides that:

> Sexually oriented business licenses granted under this chapter shall not be transferable. It is unlawful for a license held by an individual to be transferred. It is unlawful for a license held by a corporation, partnership or other non-corporate entity to transfer any part in excess of ten percent thereof, without filing a new application and obtaining prior City approval. If any transfer of the controlling interest in a business licensee occurs, the license is immediately null and void, and a new license must be issued by the City....

*Id.* at 3B–15–14 (emphasis added).

¶ 8 Petersen argues that these provisions do not prohibit her from transferring her sexually oriented business license from one location to another. The City, on the other hand, argues that the phrase "[s]exually oriented business licenses granted under this chapter shall not be transferable" should be interpreted by this court to read "[s]exually oriented business licenses granted under this chapter shall not be transferable [from one location to another]." We decline to read into the City's sexually oriented business ordinance what the drafters failed to include in it. Section 3B–15–14, when read in its en-

tirety, addresses only the transferability of ownership of a license, not the transferability of the location of the business. Our interpretation is supported by the title of section 3B–15–14: "Transfer of *ownership* of business license prohibited." (emphasis added). Furthermore, the record contains an affidavit from a former South Salt Lake City attorney who was primarily responsible for drafting the ordinance at issue in this case and which states that the transfer provision of the ordinance "was drafted to prohibit someone ... from transferring [a sexually oriented business] license to another person; and it did not apply to the transfer from [one] place within the city to another." The affidavit also states that the ordinance "was never directed to preventing a licensed business from re-locating within the City, provided that the re-location was to an appropriately zoned location." And the record reveals that the City allowed a prior transfer for another similarly situated sexually oriented business licensee in 1993. Therefore, we decline to hold that the City's sexually oriented business ordinance prevents Petersen from transferring her business license from one location to another. If the City intended this section to be read to prevent the transfer of a business license from one location to another, it should have included that either in the title of the section or somewhere within its body.[2]

¶ 9 The City further argues that section 3B–15–18(A), which provided that "[i]t is unlawful to conduct business under a license issued pursuant to this chapter at any location other than the *licensed premises* [,]" prevents Petersen from operating her business at its new location without obtaining a new business license for that location. South Salt Lake City, Ut., Ordinance No. 9601, 3B–15–18(A) (Jan. 10, 1996) (emphasis added). This contention is groundless. This provision only bars a holder of a license from conducting business at a non-licensed loca-

2. Apparently realizing this deficiency, the City revised its sexually oriented business ordinance as of May 19, 1998, to include the statement that "[i]t is unlawful to transfer or move the location

of a sexually oriented business license." South Salt Lake City, Ut., Ordinance No. 98–3, 5.56.140 (Mar. 19, 1996).

tion. It does not speak to the portability of a license.

¶ 10 Petersen next contends that her sexually oriented business does not violate the distance requirement set forth by the City's sexually oriented business ordinance because her building is at least 600 feet from another building housing a sexually oriented business. She contends that we should measure the distance from building to building. She argues that this interpretation is consistent with the purpose of the sexually oriented business ordinance, which focuses on the activities conducted inside the building and not on any exterior aspects of the property which might make the boundary lines of the premises relevant.

¶ 11 Section 3B–15–6 of the ordinance included a provision that sexually oriented businesses "regulated by this ordinance will not be located closer than 600 feet to each other and not closer than 600 feet to residences, churches, or schools." *Id.* at 3B–15–6. No method for measuring the 600 feet is provided for in the ordinance. The trial court held that the measurement could reasonably be made from property line to property line. Petersen's property line is 554.9 feet from the property line of the nearest sexually oriented business.

¶ 12 It is a "proper exercise of [a city's] police power" to zone property for specific uses. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 389–90, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Similarly, a city "may regulate adult [entertainment businesses] by dispersing them ... or by effectively concentrating them." *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Prohibiting the location of an adult entertainment business "within [a certain number of] feet of any residential zone, single- or multiple-family dwelling, church, park, or school" does not in itself create any legal problems. *Id.* at 43, 106 S.Ct. 925. However, when a city fails to set forth the standard for measuring the distance requirement, a court must determine what method of measuring makes sense

given "the ends sought to be accomplished by [the ordinance]." *Texas Nat'l Theatres, Inc. v. City of Albuquerque,* 97 N.M. 282, 639 P.2d 569, 572 (1982) (citations omitted). In so doing, the court "look[s] at the method employed by the City ... to determine its reasonableness and whether it has been consistently used." *Id.* (citation omitted).

¶ 13 The City argues that *Texas National* is directly on point and should control the disposition of this case. In *Texas National,* the court upheld a trial court's ruling that the City of Albuquerque was allowed to measure a 500–foot distance requirement between an adult theater, which was identified as a nonconforming use, and a residential zone by using property lines even though the standard for measuring the distance was undefined in the city's zoning ordinance. *Id.* at 573. The court upheld the trial court's finding that the city was allowed to use property lines because that method of measuring "was reasonable and was applied even-handedly and consistently in every case." *Id.* To support its holding, the court looked to the city zoning enforcement officer's method of measuring distances, which was "always ... from lot line to lot line." *Id.* The court also noted that "provisions of the [city's] [c]ode [spoke] in terms of 'premises' or 'area,' indicating that the regulation *applie[d] to more than just the structure." Id.* (emphasis added).

¶ 14 In the present case, there is no evidence that the City has consistently measured its distance requirement using property lines. Moreover, the ordinance at issue in *Texas National* dealt with a special use zoning ordinance that addressed entire properties, including "fences" that "could be moved in order to expand a special use" and accordingly were considered "part of the theatre." *Id. Texas National* therefore involved an entirely different zoning issue, one much broader than the narrow ordinance involved in this case, which deals only with the activities within the sexually oriented business. Because the ordinance in this case governs only activities within the business premises, or, in other words, within the building, we find that the reasonable way to measure the

distance set forth under the ordinance is from building to building. Therefore, we hold that Petersen's business license is transferable from its old location to its new location and the appropriate standard for measuring the City's 600–foot distance requirement is from building to building.

¶ 15   Reversed.

¶ 16   Associate Chief Justice DURHAM, Justice STEWART and Justice RUSSON concur in Justice ZIMMERMAN's opinion.

¶ 17   Chief Justice HOWE concurs in the result.