2000 Utah Ct. App. 85

**James Gordon HOLMES, Plaintiff and Appellant,**

v.

**AMERICAN STATES INSURANCE COMPANY, a corporation; Economy Auto, Inc., a corporation; and Clarendon National Insurance Company, a corporation, Defendants and Appellees.**

No. 990168–CA.

Court of Appeals of Utah.

March 23, 2000.

Rehearing Denied April 17, 2000.

Anthony R. Martineau and Ray G. Martineau, Salt Lake City, for Appellant.

Paul M. Belnap and Darren K. Nelson, Strong & Hanni, Salt Lake City, for Appellee American States Insurance Company.

A.W. Lauritzen, Logan, for Appellees Economy Auto, Inc., and Clarendon National Insurance Company.

Before GREENWOOD, P.J., BENCH, and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1 Appellant asserts that the trial court erred in granting appellees' summary judgment motions and in denying his Rule 56(f) motion. Appellant contends he made a prima facie showing that appellees violated several statutes governing commerce in motor vehicles, thereby precluding summary judgment. We affirm.

## BACKGROUND

¶ 2 Because this is an appeal from a grant of summary judgment, we recite the facts in the light most favorable to the nonmoving party. *See Glover ex rel. Dyson v. Boy Scouts of Am.*, 923 P.2d 1383, 1384 (Utah 1996).

¶ 3 This case arises from a chain of events relating to a 1994 "Hummer" vehicle involved in a rollover accident in 1995. Appellee American States Insurance Company (American) was the insurer of the Hummer at the time of the accident. Following the accident, the Hummer was towed to the dealership at Carleson Cadillac (Carleson). The cost of repairing the Hummer was estimated to be nearly $34,000. To settle the claim for accident damages, American paid its insured $48,670 (the pre-accident value of the Hummer) and retained the vehicle.

¶ 4 Appellant, although not in the business of collision repair, makes cosmetic body and fender repairs to the approximately fifty vehicles he owns and rents out for movie production and other uses. Appellant examined and photographed the Hummer after the accident while it was in its damaged condition at Carleson, and inquired as to whether it was for sale. Someone at Carleson referred him to American for an answer. American told appellant that they were unsure of what they were going to do with the vehicle. Appellant never spoke to American again before he purchased the Hummer.

¶ 5 Appellee Economy Auto Incorporated (Economy) acquired the Hummer in a bidding process.[1] Subsequently, appellant contacted Economy and offered to pay $15,000 for the Hummer, but Economy elected instead to consign it to auction. Appellant attended the auto auction, but the Hummer was purchased by Hillcrest Service (Hillcrest). Subsequently, appellant purchased the vehicle from Hillcrest for $23,500. At the time appellant purchased the Hummer, its damaged condition had not changed since the accident. After purchasing the Hummer, appellant received an assignment of title, which he took to the State and applied for and received an "unbranded" (i.e., "clean") title.[2]

---

1. Appellee Clarendon National Insurance Company (Clarendon) is a named party in this action because it issued the motor vehicle dealer bond for Economy.

2. A "branded title" is defined as "a title certificate that is labeled: (a) rebuilt and restored to operation; (b) flooded and restored to operation;

¶ 6 After performing some repair work on the Hummer, appellant attempted to have some additional work performed at Carleson, anticipating that the original manufacturer's warranty would cover these repairs. Upon being informed that the manufacturer's warranty would not cover the work, appellant brought this suit against appellees.[3] Appellant alleges, among other things, that appellees violated the following statutes: (1) the Motor Vehicle Act,[4] (2) the Utah Consumer Sales Practices Act, and (3) the Uniform Commercial Code. Appellant subsequently sold the Hummer, still with an unbranded title, to another purchaser for approximately $37,000.[5]

¶ 7 Appellees filed separate motions for summary judgment, arguing that appellant's causes of action based upon the alleged statutory violations should be dismissed as a matter of law. Appellant responded by filing a Rule 56(f) motion and a motion to compel discovery. The trial court denied both motions, after a hearing, upon determining that the additional discovery sought under the motions would have no bearing on the legal issues raised in appellees' summary judgment motions. The trial court did, however, grant appellant a six-week extension of time to respond to the summary judgment motions. The trial court subsequently granted appellees' motions for partial summary judgment, leaving only the issue of whether appellees did anything to cause appellant to lose the benefit of the manufacturer's warranty.

¶ 8 Appellees then adduced evidence that the manufacturer's warranty expired on its own terms at the end of the warranty period by the simple passage of time. The purported "salvage" nature of the Hummer was therefore irrelevant to the lack of warranty coverage. Upon presenting this evidence,

appellees again separately moved for summary judgment, which the trial court granted. This appeal followed.

## STANDARDS OF REVIEW

 ¶ 9 A party is entitled to summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1039 (Utah 1991). "On an appeal from a grant of summary judgment, we review the trial court's legal conclusions for correctness and grant them no deference." *Peterson v. South Salt Lake City,* 1999 UT 93, ¶ 2, 987 P.2d 57.

 ¶ 10 "When examining a statute, we look first to its plain language as the best indicator of the legislature's intent and purpose in passing the statute. Only if that language is ambiguous do we then turn to a consideration of legislative history and relevant policy considerations." *Wilson v. Valley Mental Health,* 969 P.2d 416, 418 (Utah 1998).

 ¶ 11 "We review the denial or grant of a Rule 56(f) motion for an abuse of discretion." *Mast v. Overson,* 971 P.2d 928, 931 (Utah Ct.App.1998), *cert. denied,* 982 P.2d 88 (Utah 1999). " 'Under this standard, we will not reverse unless the decision exceeds the limits of reasonability.' " *Id.* (citation omitted).

## ANALYSIS

¶ 12 Appellant's case is premised on the notion that the Hummer was a "salvage vehicle," and that the appellees' failures to follow the applicable laws concerning such vehicles

---

or (c) not restored to operation." Utah Code Ann. § 41–1a–102(7) (1998).

3. The record is unclear as to why appellant did not name Hillcrest—the actual seller from whom appellant purchased the Hummer. At oral argument before this court, appellant asserted that Hillcrest was not named because "there was no misconduct by them." In light of the statutory theories of liability advanced, the omission of the actual seller as a named defendant is curious.

4. Appellant appears to collectively refer to both the Motor Vehicle Act, Utah Code Ann. §§ 41–1a–101 to –1402 (1998 & Supp.1999), and the Motor Vehicle Business Regulation Act, *id.* §§ 41–3–101 to –803, as "the Motor Vehicle Act."

5. Appellant sold the Hummer with an unbranded title, which is the same course of conduct he assails as improper on appellees' part, and for which he seeks relief.

subjects them to liability. "Salvage vehicle" is a term of art, defined as follows:

> "Salvage vehicle" means any vehicle: (a) damaged by collision, flood, or other occurrence to the extent that the cost of repairing the vehicle for safe operation exceeds its fair market value; or (b) that has been declared a salvage vehicle by an insurer or other state or jurisdiction, but is not precluded from further registration and titling.

Utah Code Ann. § 41–1a–1001(6) (1998).

■ ¶ 13 Hence, a salvage vehicle either must cost more to repair than its fair market value, or must be declared salvage by an insurer. It appears that neither requirement is met in this case. First, the cost of repair (approximately $34,000) did not exceed the fair market value (the $48,607 paid to American's insured). Second, it does not appear that the Hummer was ever "declared a salvage vehicle by an insurer." *Id.* However, given the summary judgment posture of this case, we will assume, for purposes of this appeal, that the Hummer is a "salvage vehicle." Despite this generous assumption, appellant's claims were still properly dismissed as a matter of law because the statutes relied upon by appellant, which we now address in turn, do not afford him relief under the facts of this case.

### I. The Motor Vehicle Acts

■ ¶ 14 Appellant first contends that appellees breached the Motor Vehicle Act (MVA), Utah Code Ann. §§ 41–1a–101 to –1402 (1998 & Supp.1999), and the Motor Vehicle Business Regulation Act (MVBRA), *id.* §§ 41–3–101 to –803 (1998 & Supp.1999) (collectively the MV Acts), and that appellees' breaches constituted negligence per se or at least prima facie evidence of negligence.

¶ 15 The MVBRA imposes liability on certain persons and entities—such as dealers, salespeople, manufacturers, crushers, and body shops—for their misconduct in the course of dealing in automobiles. *See, e.g., id.* § 41–3–201(2) (Supp.1999) (listing those subject to licensing requirements). The only category that is even arguably applicable in this case is "dealer," which is defined in the MVBRA as a person "whose business in whole or in part involves selling new, used, or new and used motor vehicles." *Id.* § 41–3–102(8)(a)(i) (1998). However, the MVBRA makes the following relevant exception to the definition of dealer: *"An insurance company . . . that sells the motor vehicle under contractual rights that it may have in the motor vehicle is not considered a dealer." Id.* § 41–3–103(1)(a) (emphasis added). Hence, under the plain language of the MVBRA, appellant does not have a cause of action under this statute against American—the insurer in this matter.

■ ¶ 16 As for Economy, the record is unclear as to whether it is a "dealer" under the facts of this case. However, even assuming that it is a dealer, or, for that matter that any of the appellees is an entity covered by the MVBRA, summary judgment was still appropriate because there is no evidence in the record that any of the appellees did anything that would subject them to civil liability to appellant under the MVBRA.[6] Civil liability under the MVBRA is premised on one of the following actions: "(a) knowingly selling a salvage vehicle . . . without disclosing that the salvage vehicle has been repaired or rebuilt; (b) knowingly making a false statement on a vehicle damage disclosure statement . . .; or (c) fraudulently certifying that a damaged motor vehicle is entitled to an unbranded title . . . when it is not." *Id.* § 41–3–702(3)(a)–(c). Subsection (a) has no application because the Hummer was sold to appellant in its damaged condition, and therefore had not been "repaired or rebuilt." Appellant makes no allegation that subsection (b) has been violated, and thus we do not address it. As to subsection (c), the record is devoid of any evidence of a fraudulent certification by any of the appellees concerning the Hummer's entitlement to an unbranded title. In sum, we agree with the trial court that appellant "was not at any time misled or misrepresented to, there was no fraud, he never relied on anything as far as statements, or on the branded or unbranded title."

---

6. Criminal liability under the MVA is also available in appropriate cases. *See* Utah Code Ann. § 41–1a–1005(1)(a)(i) (1998) (requiring insurance company that has declared vehicle a salvage vehicle and taken possession to surrender title certificate to division within ten days). Violation of this provision is a class B misdemeanor. *See id.* § 41–1a–1005(2).

¶ 17 As to Clarendon, appellant argues that he is entitled to relief under the terms of Economy's dealer bond, issued by Clarendon. We need not address this argument because indemnification under the terms of the bond is premised on liability for violating the MVBRA or "any law respecting commerce in motor vehicles." Hence, because we have determined that Economy has no liability under these laws on the facts of this case, there is no relief available to appellant under the bond issued by Clarendon.

¶ 18 Because the MV Acts do not provide appellant with relief against any of the appellees under the facts of this case, summary judgment was appropriate.

## II. The Utah Consumer Sales Practices Act

¶ 19 Appellant next argues that appellees violated the Utah Consumer Sales Practices Act (Sales Practices Act). *See* Utah Code Ann. §§ 13–11–1 to –23 (1999). However, instead of properly arguing appellees' liability under the terms of the Sales Practices Act itself, appellant attempts to bootstrap liability by asserting that violations of the MV Acts are "per se or prima facie evidence of unconscionable acts and practices that violated [portions] of the Sales Practices Act." Even assuming we had determined that a valid cause of action arose under the MV Acts, appellant would still have to show that appellees violated the Sales Practices Act. Simply stated, appellant's attempt to bootstrap liability would be without merit even if civil liability attached under the MV Acts because a violation of the Sales Practices Act must be established under the Sales Practices Act, and not by attempting to demonstrate liability under other statutes.

¶ 20 The central purpose of the Sales Practices Act is "to protect consumers from suppliers who commit deceptive and unconscionable sales practices." *Id.* § 13–11–2(2). Thus, appellees are only subject to the Sales Practices Act in this case if they are "suppliers" in a "consumer transaction" as defined by the Sales Practices Act. " 'Supplier' means a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." *Id.* § 13–11–3(6). " 'Consumer transac-

tion' means a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance), to a person for primarily personal, family, or household purposes...." *Id.* § 13–11–3(2).

¶ 21 Under the facts of this case, it is clear that appellees are not appellant's "supplier," and that appellant and appellees were not engaged in a "consumer transaction." Hence, the Sales Practices Act has no application here. Moreover, even if the Sales Practices Act applied, appellees did nothing to deceive or make any misrepresentations to appellant. Appellant knew the character and value of the Hummer, and paid an amount far below the retail value of an undamaged vehicle. It is interesting to note that appellant did not even name Hillcrest, his actual "supplier" in the eventual "consumer transaction" in which he bought the Hummer. The Sales Practices Act has no application to the facts of this case. Thus, summary judgment was appropriate.

## III. The Uniform Commercial Code

¶ 22 Appellant's final statutory argument is that appellees violated Article 2 of the Uniform Commercial Code (UCC). *See* Utah Code Ann. §§ 70A–2–101 to –725 (1997 & Supp.1999). Appellant attempts to bootstrap liability under the UCC—just as he did under the Sales Practices Act—by arguing that violations of the MV Acts amount to a breach of warranty that is actionable under the UCC. Liability for violating the UCC, like liability for violating the Sales Practices Act, must be based upon a violation of the UCC itself, and not some other statute. In short, if appellees are not subject to Article 2 of the UCC under the facts of this case, then they cannot be found liable to appellant for violating the UCC, regardless of any potential violation of other statutes such as the MV Acts.

¶ 23 Liability under Article 2 of the UCC is premised on a contract, bargain, agreement, or transaction between a "buyer" and a "seller." *See, e.g., id.* § 70A–2–313(1)(a) (1997) ("Any affirmation of fact or promise made *by the seller to the buyer* ... creates an express warranty that the goods shall conform to the affirmation or promise.") (em-

phasis added). Hence, the UCC has no application in this case for at least two reasons.

¶ 24 First, there was no "affirmation of fact or promise" made by appellees to appellant. In fact, the only interactions between appellant and appellees prior to purchasing the Hummer, as reflected in the record, are (1) appellant's telephone call to American wherein American simply stated that it was unsure about what it was going to do with the Hummer; and (2) Economy's rejection of appellant's offer to purchase the Hummer.

¶ 25 Second, there was no "seller to buyer" relationship between any of the appellees and appellant. Appellant's "seller" was undisputably Hillcrest, not the appellees. In light of the foregoing, the UCC—like the other statutes relied upon by appellant—does not apply to the facts of this case. Accordingly, summary judgment was appropriate.

### IV. Rule 56(f) Motion

¶ 26 Appellant also argues that the trial court erred in denying his Rule 56(f) motion because he was denied the right to: (1) receive "appropriate and meaningful responses to [his] discovery requests"; (2) depose defendants' fact witnesses; and (3) "obtain responses directed toward the discovery of facts that were highly relevant to the issues raised by the pleadings." Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Utah R. Civ. P. 56(f). We will not reverse the trial court's denial of a Rule 56(f) motion "'"unless the decision exceeds the limits of reasonability."'" *Mast v. Overson,* 971 P.2d 928, 931 (Utah Ct.App.1998) (citations omitted), *cert. denied,* 982 P.2d 88 (Utah 1999).

¶ 27 Because appellant's claims fail as a matter of law, there was no need to allow further discovery. *See id.* at 934 (stating further discovery unnecessary when case fails as matter of law). Therefore, the trial court did not abuse its discretion when it denied the Rule 56(f) motion after determining that the additional discovery sought would not have addressed the legal issues presented in the summary judgment proceeding.

### CONCLUSION

¶ 28 Appellant's assertion that his prima facie showing of negligence precluded summary judgment is without merit. None of the statutes he relies upon to establish liability apply under the facts of this case. Hence, summary judgment was appropriate. Moreover, because appellant's claims fail as a matter of law, and the additional discovery sought would not have been relevant to the legal issues in the summary judgment proceeding, the trial court did not abuse its discretion in denying the Rule 56(f) motion.

¶ 29 Affirmed.

¶ 30 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and GREGORY K. ORME, Judge.