2011 UT App 67

**SMITH'S FOOD AND DRUG, INC., Petitioner,**

v.

**LABOR COMMISSION and Gina Christensen, Respondents.**

No. 20090292–CA.

Court of Appeals of Utah.

March 10, 2011.

Bret A. Gardner and Kristy L. Bertelsen, Salt Lake City, for Petitioner.

Richard R. Burke, Sandy; and Alan L. Hennebold, Salt Lake City, for Respondents.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

VOROS, Judge:

¶ 1 Smith's Food & Drug, Inc. (Employer) challenges a decision of the Utah Labor Commission (the Commission) granting workers' compensation benefits to Gina Christensen (Claimant). We affirm.

## BACKGROUND

¶ 2 In 1993, Claimant began working for Employer in its dairy department as a cheese cook. Claimant's job entailed working twelve-hour shifts converting milk to cheese curds in large vats. That process required Claimant, usually with the aid of a co-worker, to repeatedly lift, attach, push, pull, and insert large industrial equipment, some weighing as much as seventy pounds. Around July 2001, Claimant began experiencing intermittent shoulder pain that was exacerbated by her job duties. That pain always subsided. However, in early November 2001, Claimant began experiencing stiffness and soreness in her shoulder, which she testified was different from the pain she had experienced three to four months earlier. By about November 10, 2001, Claimant was experiencing constant wrist, elbow, and shoulder pain, as well as periods of numbness in two of her fingers.

¶ 3 Claimant sought medical treatment. A cervical spine X-ray and MRI revealed spondylosis consistent with degenerative disc disease, disc herniations, and disc abnormality. Her doctor recommended surgery. A second doctor performed a medical evaluation at Employer's request. He found no medical causal relationship between Claimant's work and the condition of her discs. He noted that Claimant had a pre-existing condition and opined that, although her work might have aggravated that condition, it was not the cause. Claimant had a history of cervical conditions dating back to 1989. In February 2002, Claimant underwent a cervical discectomy and fusion. Her doctor later stated that Claimant "was well prior to a work related injury of November 20, 2001," and that he had found "acute disc herniations" as well as "evidence of acute damage." He opined that Claimant had "suffered an acute event as a result of a work injury."

¶ 4 In August 2002, Claimant filed a claim for workers' compensation benefits pursuant to Utah Code section 34A–2–401(1) of the Utah Workers' Compensation Act (the Act). *See* Utah Code Ann. § 34A–2–401 (2005). Because of the conflicting opinions of Claimant's doctor and Employer's medical consultant, a medical panel (the Medical Panel) was appointed. *See* Utah Admin. Code R602–2–2(A)(1) (mandating the use of a medical panel in workers' compensation cases where there are "[c]onflicting medical opinions related to causation of the injury"). The Medical Panel ultimately agreed with Claimant's doctor and

concluded that his "description of acute disc herniations and damage ... provide[d] the most pertinent description of the pathology and [led] to the conclusion that a more acute event had occurred." [1]

¶ 5 In June 2006, the Administrative Law Judge (the ALJ) ruled that Claimant had suffered a cumulative trauma injury and that the injury was caused "by accident arising out of and in the course of [her] employment," *see* Utah Code Ann. § 34A–2–401(1) (2005), and awarded her workers' compensation benefits. Employer appealed that decision to the Commission, which adopted the ALJ's findings of fact and affirmed the ALJ's ruling. Employer seeks review of that decision.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Employer contends that the Commission erred in determining that Claimant was injured "by accident," and thus awarding her workers' compensation benefits under the Act, *see id.* § 34A–2–104(1). "When the Legislature has granted an agency discretion to determine an issue, we review the agency's action for reasonableness." *Caporoz v. Labor Comm'n,* 945 P.2d 141, 143 (Utah Ct.App.1997). Here, the Legislature has granted the Commission "the duty and the full power, jurisdiction, and authority to determine the facts and apply the law" under the Act. *See* Utah Code Ann. § 34A–1–301. Thus, "we must uphold the Commission's determination ... unless the determination exceeds the bounds of reasonableness and rationality so as to constitute an abuse of discretion.... Moreover, we resolve any doubt respecting the right to compensation in favor of the injured employee." *Ae Clevite, Inc. v. Labor Comm'n,* 2000 UT App 35, ¶ 7,

996 P.2d 1072 (citation and internal quotation marks omitted).

## ANALYSIS

¶ 7 Compensation for a work-related injury is governed by Utah Code section 34A–2–401:

> An employee ... who is injured ... by accident arising out of and in the course of the employee's employment ... shall be paid compensation for loss sustained on account of the injury.

Utah Code Ann. § 34A–2–401(1). This section sets forth two prerequisites to recovery. "First, the injury must be 'by accident.' Second, the language 'arising out of or in the course of employment' requires that there be a causal connection between the injury and the employment." *Allen v. Industrial Comm'n,* 729 P.2d 15, 18 (Utah 1986).[2] Employer argues that the Commission erred in determining that Claimant's cumulative trauma claim should be classified as an industrial accident.

¶ 8 The definition of *accident* as used in Utah Code section 34A–2–401(1) is broad. *See Carling v. Industrial Comm'n,* 16 Utah 2d 260, 399 P.2d 202, 203 (1965). An accident is " 'an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events.' " *Allen,* 729 P.2d at 18 (quoting *Carling,* 399 P.2d at 203). "The basic and indispensable ingredient of 'accident' is unexpectedness." *Id.* at 22 (additional internal quotation marks omitted). An accident "may be *either* the cause *or* the result of an injury." *See id.* Additionally, an accident "is not necessarily restricted to some single incident which happened sudden-

---

1.  Under the Utah Occupational Disease Act, a claimant's compensation is reduced to the extent the occupational disease is the result of non-work-related causative factors. *See* Utah Code Ann. § 34A–3–110 (2005). However, the Utah Workers' Compensation Act has no similar apportionment requirement for industrial accidents. *See id.* § 34A–2–401. Although the instant claim arose under the latter act, the Medical Panel initially apportioned Claimant's injuries 60% to non-industrial factors and 40% to industrial factors. When asked to clarify its report by stating whether there was a medically

demonstrable causal connection between Claimant's medical condition and the industrial accident, the Medical Panel answered affirmatively.

2.  The causation prerequisite also has two subparts: (1) legal causation, which tests "[w]hether an injury arose out of or in the course of employment," *Allen v. Industrial Comm'n,* 729 P.2d 15, 25 (Utah 1986), and (2) medical causation, which tests whether "the disability is medically the result of an exertion or injury," *id.* at 27. Employer does not challenge causation.

ly at one particular time and does not preclude the possibility that due to exertion, stress or other repetitive cause, a climax might be reached in such manner as to properly fall within the definition of an accident as just stated above." *Id.* at 18 (internal quotation marks omitted). Further, an accident may include internal structural failures, such as a back injury. *See id.* at 18–19 & n. 3

¶ 9 *Specialty Cabinet Co. v. Montoya,* 734 P.2d 437 (Utah 1986), is instructive. That case involved two claimants. *See id.* at 438. One claimant began experiencing back pain after three years of designing and building cabinets. *See id.* at 437–38. The other claimant began experiencing knee pain and a gradual loss of mobility after one year of participating in fitness activities that were part of the physical education course he taught. *See id.* at 438. The two claimants' employers and the State Insurance Fund argued that, "to be compensable as an injury by accident, the precipitating event must be a time-definite, identifiable, and unusual occurrence and not simply something which happens within the normal stresses and strains of the employment activity." *Id.* at 439. Our supreme court expressly rejected this standard, holding instead that "a compensable accident includes 'the possibility that due to exertion, stress or other repetitive cause, a climax might be reached in such manner as to properly fall' within the coverage of [the Act]." *Id.* (quoting *Carling,* 399 P.2d at 203). Applying this standard, the supreme court found "no difficulty in determining that the injuries to [the two claimants] occurred by accident," because "their injuries were the unexpected and unintended result of exertions which occurred at work and in the course of their employment." *Id.* at 439

¶ 10 We reached a similar conclusion in *Nyrehn v. Industrial Commission,* 800 P.2d 330, 336 (Utah Ct.App.1990) (holding that claimant with pre-existing asymptomatic spondylolysis established legal causation). The claimant, a stock room clerk, "felt a gradual onset of pain in her lower back while performing her duties at work." *Id.* at 331. That work included two and a half months of

lifting and carrying merchandise tubs weighing between fifteen and forty-five pounds. *See id.* at 331, 335. "The industrial accident, therefore, was not a single incident of lifting one tub of merchandise; it was the climax of repetitive lifting." *Id.* at 336.

¶ 11 Here, Claimant's pain resulted from repetitively lifting and manipulating industrial kitchen equipment. In fact, her doctor found, and the Medical Panel accepted, that Claimant had "acute disc herniations" indicating "that there had been an acute event that occurred at work to cause [Claimant's] condition." As in *Nyrehn,* Claimant's injury appears to have been caused by "a climax of repetitive lifting" and similar exertions. *See id.* at 335. In addition, as in *Specialty Cabinet,* Claimant's persistent wrist, elbow, and shoulder pain, and periods of numbness in two of her fingers were "the unexpected and unintended results of exertions which occurred at work." *Specialty Cabinet,* 734 P.2d at 439.

¶ 12 Employer contends that Claimant's injury was not incurred "by accident," because it was not caused by a "sudden, unexpected or unintended occurrence," but was instead "based upon repetitive work activities that resulted in a *gradually* developing ... condition that at the very least developed over several months." More specifically, Employer argues that cumulative injuries must occur over a "relatively short period of time" in order to qualify as an accident, and that, "at some point in time, a cumulative trauma injury changes from an industrial accident to an occupational disease." In support of this argument, Employer relies on *Carling v. Industrial Commission,* 16 Utah 2d 260, 399 P.2d 202 (1965). There, the court noted that an accident "must be distinguished from gradually developing conditions which are classified as occupational diseases." *Id.* at 203. The claimant in *Carling* suffered substantial hearing loss that he alleged was caused by noise emanating from an air-tamping gun, which he operated as part of his job. *See id.* at 202. The court affirmed the Commission's determination that the claimant was not injured "by accident" because the evidence demonstrated that the claimant suffered a gradual hearing loss spanning four-

teen years that "could [have been] due to a number of factors, including heredity," and that the noise that the claimant was subjected to "was within the limits of tolerance of ordinary ears." *Id.* at 203.

¶ 13 The Medical Panel here concluded that although Claimant's condition did occur over a period of several months, Claimant did not experience the pain for which she sought medical treatment and workers' compensation benefits until November 2001, the same month in which she was repeatedly lifting and pushing heavy equipment over twelve-hour work shifts. Moreover, the constant pain she experienced in November 2001 was qualitatively different from the intermittent pain she had experienced three to four months earlier. As the ALJ noted, "The period of time in which [Claimant] experienced periodic shoulder pain was short until the pain evolved into chronic pain thereafter." Finally, the Medical Panel endorsed the conclusion of Claimant's doctor that an "acute event" caused Claimant's injury.

¶ 14 We conclude that, on the spectrum of work-related harms, the case at bar may reasonably be viewed as closer to the industrial accident end than to the occupational disease end. This is particularly true in light of *Carling*'s recognition that an accident "is not necessarily restricted to some single incident which happened suddenly at one particular time and does not preclude the possibility that due to exertion, stress or other repetitive cause, a climax might be reached in such manner as to properly fall within the definition of an accident...." *Id.*; *see also Schmidt v. Industrial Comm'n,* 617 P.2d 693, 695 (Utah 1980) (Maughan, J., with one justice concurring with comments and one justice concurring in the result).[3]

## CONCLUSION

¶ 15 In view of the findings of the Medical Panel, the meaning of *accident* as explicated

by our case law, and the fact that "the compensation statutes should be liberally construed in favor of recovery," *Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888, 892 (Utah 1981) (internal quotation marks omitted), *superseded on other grounds by statute,* Utah Code Ann. § 63–41–1 to–22 (1989), *as recognized in Zimmerman v. Industrial Comm'n,* 785 P.2d 1127, 1129–30 (Utah Ct.App.1989), we cannot say that the Commission's ruling that Claimant's injury was caused by accident exceeds the bounds of reasonableness and rationality. That ruling is accordingly affirmed.

¶ 16 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and MICHELE M. CHRISTIANSEN, Judge.

---

**3.** *Schmidt v. Industrial Commission,* 617 P.2d 693 (Utah 1980) does not support Employer's position. Employer's reply brief states, "In *Schmidt,* the court held that an accident must have a definite time and place." *Schmidt* does employ the phrase "definite time and place." *Id.* at 695. But contrary to Employer's characterization, *Schmidt* holds that the injury *need not be* identified by a definite time and place:

In this jurisdiction, it is settled beyond question [that] an internal failure brought about by exertion in the course of employment may be an accident within the meaning of [the statute], *without the requirement that the injury result from some incident which happened suddenly and is identifiable at a definite time and place.* *Id.* (emphasis added).