2002 UT 31

**WESTSIDE DIXON ASSOCIATES LLC, Petitioner,**

v.

**UTAH POWER & LIGHT COMPANY/ PACIFICORP, Utah Public Service Commission, Respondents.**

No. 20000731.

Supreme Court of Utah.

March 19, 2002.

---

J. Kent Holland, Salt Lake City, for petitioner.

Mark E. Hindley, John M. Eriksson, Sandy Mooy, Salt Lake City, for respondents.

DURHAM, Justice.

## INTRODUCTION

¶ 1 This case arises from the installation of a master meter for the provision of electric service by petitioner Westside Dixon Associ-

ates, L.L.C. (Westside) to its condominium units in the Broadway Lofts Building (Broadway Lofts). Westside challenges the determination of the Utah Public Service Commission (the PSC) that it was prohibited from installing a master meter under Utah Admin. Code Rule 746–210, and that no exemption applied to it under the rule. We affirm.

## BACKGROUND

¶ 2 The instant petition for review arises from the conversion of the Broadway Lofts building in downtown Salt Lake City from a warehouse into a building containing a mix of commercial and retail space on the lower level and individual residential condominium space on the upper levels. The building, originally known as the J.G. McDonald Building, was built in 1901. In December 1999, a "gut" renovation of the Broadway Lofts was substantially completed, including the installation of separate heating and cooling systems for each unit. There is no central boiler or central chiller for the condominium units. In July, 1998, Westside, the project's developer, obtained a building permit as required by Salt Lake City to undertake the renovation.

¶ 3 As part of the conversion of the building, Westside installed a "master meter" system for metering electrical service to the condominiums. Master metering is the practice of metering and billing the electric usage of multiple tenants or individuals through one utility meter. Westside's metering system is also "sub-metered." Sub-metering is the practice whereby the tenant or individual is metered and billed by an entity other than the utility. Westside contracted with Relms, Inc. (Relms) to provide the sub-metering and billing for the condominium owners.

¶ 4 Douglas Marks (Marks), PacifiCorp's operations manager, testified before the PSC that PacifiCorp received two Requests for Electric Service from Westside for the provision of electricity to the Broadway Lofts, but neither requested master metering. Both requests stated that there were 101 units involved, thus suggesting that PacifiCorp would individually meter all the condominium units. While Westside contends that it submitted plans to PacifiCorp in February 1998

"showing master metering/sub metering," Westside did not introduce these plans into evidence before the Commission. Marks testified that Westside submitted an electrical site plan, but that it did not show or suggest master metering.

¶ 5 During the construction of the condominium units at the Broadway Lofts, PacifiCorp supplied power to the contractor. As the project neared completion, the contractor informed Westside that arrangements for the permanent provision of electricity would have to be made. On December 10, 1999, PacifiCorp's attorney wrote a letter to Westside's attorney informing him that the master metering system in place at the Broadway Lofts was forbidden under the Commission's rules. PacifiCorp stated that electricity would be provided to the condominiums as long as PacifiCorp could install its own meters.

¶ 6 In light of Westside's refusal to permit PacifiCorp to install meters, on December 21, 1999, PacifiCorp informed Westside that power to the condominium units would be terminated on January 3, 2000. The termination was based on Westside's non-compliance with Utah Administrative Rule 746–210 and PacifiCorp's Electric Service Regulation No. 7. In response, Westside filed a Formal Complaint with the PSC on January 4, 2000. The PSC adopted the Report and Order of the administrative law judge, who found that Westside was in violation of Rule 746–210, and did not qualify for an exemption under the rule. Upon Westside's request for review, the PSC granted it a second opportunity to establish that it qualified for an exemption under Rule 746–210. Finding that Westside failed again to support its claimed entitlement to an applicable exemption, the PSC dismissed the complaint. Westside petitioned this court for judicial review.

## STANDARD OF REVIEW

¶ 7 The Utah Administrative Procedures Act, Utah Code Ann. section 63–46b–1 to –22 (1997) (UAPA), governs the appropriate standards of review of an agency determination. When reviewing an agency action that is "contrary to a rule of the agency," Utah Code Ann. § 63–46b–16(4)(h)(ii), we ap-

ply an intermediate standard of review, deferring to an agency's interpretation as long as it is both reasonable and rational. *Thorup Bros. Constr. v. State Tax Comm'n*, 860 P.2d 324, 327 (Utah 1993); *see also SEMECO Indus. v. State Tax Comm'n*, 849 P.2d 1167, 1174 (Utah 1993) (Durham, J., dissenting). This standard applies to the first issue argued as agency error by Westside, regarding the interpretation of Utah Admin.Code Rule 746–210.

¶ 8 As to the second and third claims of error, regarding the determination of whether an exemption applied to Westside according to the terms of the statute and whether or not any waiver was made, section 63–46b–16(4)(g) of UAPA is implicated. That subsection of the statute may permit granting relief to an appellant who "has been substantially prejudiced" if "the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court[.]" *Id.* These issues are also governed by a reasonableness standard, in view of the fact that the Commission, "by virtue of its experience or expertise, is in a better position than the courts to give effect to the regulatory objective to be achieved." *Morton Int'l, Inc. v. State Tax Comm'n*, 814 P.2d 581, 586 (Utah 1991); *SEMECO*, 849 P.2d at 1172.[1]

## ANALYSIS

### I. PUBLIC UTILITY REGULATORY POLICIES ACT

¶ 9 Utah Administrative Code Rule 746–210, whose interpretation and application is at the heart of this dispute, is derived from the federal Public Utility Regulatory Policies Act of 1978, 16 U.S.C. section 2601–2645 (2000) et seq. (PURPA). PURPA's aims include "conservation of energy" and "optimization of the [electric utility] efficiency." 16 U.S.C. § 2611. PURPA's stance on master metering is unambiguous. It states, "to the extent determined appropriate under section

2625(d) of this title, master metering of electric service in the case of new buildings *shall be prohibited or restricted to the extent necessary to carry out the purposes of this chapter.*" 16 U.S.C. § 2623(b)(1)(2000) (emphasis added). Section 2625(d) states:

separate metering shall be determined appropriate for any new building for purposes of section 2623(b)(1) of this title if (1) there is more than one unit in such building; (2) the occupant of each such unit has control over a portion of the electric energy used in such unit; and (3) with respect to such portion of electric energy used in such unit, the long-run benefits to the electric consumers in such building exceed the costs of purchasing and installing separate meters in such building.

16 U.S.C. § 2625(d).

¶ 10 In most instances, master metering of an entire building with multiple tenants through only one meter would be appropriate if a central boiler or chiller were servicing all the units. Utah Admin. Code Rule 746–210–2(A)(2). Otherwise, master metering is discouraged because an individual electric consumer is not billed exclusively for the consumer's own use of electricity. PURPA's purpose is to encourage conservation by, for instance, rewarding consumers who turn off unnecessary lights, purchase energy efficient appliances, or conserve heat or air conditioning. If consumers cannot track their use of electricity, as occurs with master metering, their motivation to conserve is greatly diminished. Additionally, even if users receive individual bills as a result of sub-metering, such metering is problematic because consumers in a master metered building are not customers of a regulated utility. If any dispute arises between the tenant and the landlord, neither the PSC nor the utility can offer assistance. Utah Admin. Code Rule 746–210–5.

¶ 11 In order to implement PURPA, in 1981 the PSC adopted the PURPA standards, and subsequently enacted Utah Administrative Code Rule 746–210.

---

1. We note that all parties to this petition cite *Drake v. Industrial Comm'n*, 939 P.2d 177 (Utah 1997), regarding appropriate agency standards of review. We note that *Drake* was not a UAPA case, an observation that applies to *State v. Pena*, 869 P.2d 932 (Utah 1994), as well.

## A. "New Building" under PURPA

■ ¶ 12 Rule 746–210 prohibits master metering in "new buildings." Utah Admin. Code Rule 746–210–1(A). Because the Broadway Lofts building was originally built in 1901, Westside has argued that it is not bound by the master metering prohibition. The term "new building," however, is defined as: "[1] those structures ... for which a *building permit is obtained on or after August 1, 1984* or [2] if no permit is required, for which construction is commenced on or after August 1, 1984." [2] Rule 746–210 3(A) (emphasis added). According to the plain meaning of the definition provided in the rule, the Commission found that the Broadway Lofts was indeed a "new building," inasmuch as Westside was "required to obtain a building permit to convert the warehouse into a condominium, which it did on or about July 1, 1998." The PSC's interpretation of the rule, and its application of the facts found to the rule, was reasonable and rational. Westside's argument that the PSC incorrectly found that it was a "new building" under rule 746–210 fails.

## B. Exemption under Rule 746–210

¶ 13 Westside next argues that the PSC erred concluding, first at the evidentiary hearing and a second time in its response to the PSC's Order Granting Review, that Westside did not qualify for an exemption under rule 746–210–3's specific benefit-to-cost exemptions. Such exemptions are contemplated when the goals of PURPA would not be served. Utah Admin. Code Rule 746–210–2, –3.

¶ 14 To qualify for a case-specific exemption from the master metering prohibition, a party must engage in a two-step procedure: (1) it must make a request in writing to the utility using a benefit-to-cost ratio analysis showing that master metering costs are less than separate metering costs, and (2) in employing the methodology specified in the rule, which requires a showing that "the benefit-to-cost ratio is less than one with respect to

separate metering using the cost effectiveness test guidelines," it must "demonstrate that the long-run benefits of individual metering to the electric consumer are less than the costs of purchasing and installing separate meters." Utah Admin. Code Rule 746–210–3. In the event that a utility denies the exemption request, the PSC is empowered to "initiate ... proceedings ... arising out of an informal complaint." Utah Admin. Code Rule 746–210–4. The PSC is reminded that not only must the benefit-to-cost determination be made, but that the customer must also show "that a granted exemption status will be consistent with the stated purposes of Title I of PURPA; i.e., conservation, efficiency and equity." *Id.*

¶ 15 The PSC found that Westside failed to meet its burden on both of the rule's requirements. First, Westside did not "[make] a written request to PacifiCorp for permission to master meter or sub-meter the condominiums." Second, Westside did not satisfy the burden of proof placed upon it by the rule to "demonstrate that the long-run benefits of individual metering to the electric consumer are less than the costs of purchasing and installing separate meters." Utah Admin. Code Rule 746–210–3. At the evidentiary hearing, the PSC determined that Westside "made no attempt" to apply the rule's formula, and after reviewing additional information submitted by Westside after the grant of review, the PSC concluded that Westside "has failed to submit a study meeting the requirements" of Rule 746–210–3.

■ ¶ 16 Review of the record reveals that Westside failed: (1) to show that a difference in energy consumption at the Broadway Lofts would result if the condominiums were master metered rather than separately metered, as required by Rule 746–210–3(B); (2) to quantify the difference in installed cost between master and individual metering, as required by Rule 746–210–3(D); or (3) to present a cost-to-benefit ratio equal to the present worth of benefits described in section (B) divided by the present worth costs de-

2. The second type of "new building" defined in the rule, for which construction is defined as commencing "when footings are poured[,]" is not applicable to the Broadway Lofts, since a building permit was required for the renovation, and this second definition only applies to buildings which do not require a building permit. *See* Utah Admin. Code Rule 746–210–3(A).

scribed in section (D). *see* rule 746–210–3(E). Contrary to the PSC's directive, Westside utilized an inapplicable rate schedule in its attempt to satisfy the cost-to-benefit analysis required by the rule and entirely failed to establish an evidentiary basis for an exemption.

¶ 17 Finally, the PSC found as a matter of law that Westside could not meet its burden to establish an exemption, because Westside itself installed individual meters. The rule requires that the customer demonstrate that "the long-run benefits of individual metering to the electric consumer are less than the costs of purchasing and installing separate meters.... The benefits ... shall reflect the difference in electricity use which results when separate metering is utilized rather than master-metering." Utah Admin. Code Rule 746–210–3 and 3(B). Westside cannot fulfill the requirements of the rule because it cannot show that the "benefits" of its metering system are less than the "costs" of sub-metering because the Broadway Lofts already have sub-meters in place.

¶ 18 The record demonstrates that the PSC was reasonable in its finding that Westside failed to make the necessary showing under the rule to qualify for an exemption to the master metering prohibition, and that its ruling was supported by substantial evidence.

### C. Waiver of Right to Object to Master Metering

¶ 19 Westside next argues that it submitted electrical plans to PacifiCorp in February 1998, which PacifiCorp accepted, "showing master metering/sub metering" and PacifiCorp "waived" any objection to master metering at the Broadway Lofts. We disagree.

¶ 20 Utah law is clear on the elements needed to find waiver: (1) "A waiver is the intentional relinquishment of a known right.... *[T]here must be an existing right, benefit or advantage,* a knowledge of its existence, and an intention to relinquish it." *Geisdorf v. Doughty,* 972 P.2d 67, 72 (Utah 1998) (emphasis added) (quoting *Soter's Inc. v. Deseret Fed. Sav. & Loan Ass'n.,* 857 P.2d 935, 942 (Utah 1993) (other citation omitted)).

PacifiCorp had no "right" to waive regarding Westside's purported "request" to master meter the Broadway Lofts. The PSC is the only body empowered, pursuant to rule 746–210, to ultimately find and grant an exemption to the master metering prohibition, not PacifiCorp. The utility has no discretion in granting an exemption. Utah Admin. Code Rule 746–210–1.

¶ 21 Furthermore, the record provides no factual support for establishing waiver on PacifiCorp's part. While Westside asserts that it submitted plans that PacifiCorp accepted that showed master metering the condominiums, there is no evidence of this. These plans were not presented at the evidentiary hearing and Westside's only witness testified he did not submit any such plans to PacifiCorp and had no knowledge of anyone else doing so. The documents Westside did submit at the hearing, one dated February 3, 1998, and the other apparently undated, were titled "Requests for Electrical Service" and do not refer to master metering. The logical inference from both documents, which state "For each unit" and "In addition to the 101 units and the house panels, we have to provide 2 × 800 Amp [illegible] services for the future restaurants[,]" respectively, is that individual metering, not master metering, was contemplated.

¶ 22 Thus, as a matter of both law and fact, Westside's waiver argument fails.

### II. CONSTITUTIONAL MATTERS RAISED IN THIS PETITION

¶ 23 The record shows that, for the first time, Westside has raised arguments in this petition about the unconstitutionality of Rule 746–210 under both the Due Process and Equal Protection Clauses of the United States Constitution. Pursuant to the Utah Code, "No applicant may urge or rely on any ground not set forth in the application [for rehearing] in an appeal to any court." Utah Code Ann. § 54–7–15(2)(b) (2001). As this court has stated, in the interest of avoiding "procedural confusion and piecemeal litigation[,]" a petitioner must bring all potential claims, including constitutional challenges, before the state agency involved. *Nebeker v. Utah Tax Comm'n,* 2001 UT 74, ¶ 19, 34 P.3d

180. This requirement serves several objectives: (1) such notice gives the state agency the ability to reassess its own administrative rule if the rule is the subject of a constitutional challenge, (2) the agency involved may engage in fact-finding best suited to assess and resolve the constitutional claim, and (3) a petitioner will not be able to revive claims ... "originally lost due to his [or her] own lack of diligence in failing to exhaust ... administrative remedies." *Id.* at ¶ 20 (citation omitted). Since Westside did not raise these claims when petitioning the PSC for review of its original order, which petition was granted as to the rate exemption argument, it has waived its right to raise these arguments in this court. We therefore will not consider the substance of its constitutional challenges.

### CONCLUSION

¶ 24 The PSC's conclusion that the Broadway Lofts building is subject to the master meter prohibition was both reasonable and rational. The PSC's determination that Westside failed to establish an exemption under Rule 746–210 to the prohibition was supported by substantial evidence. There has been no showing that PacifiCorp, either legally or factually, waived any right to object to Westside's master metering. Finally, Westside's constitutional arguments were not timely raised. We therefore affirm the PSC's order dismissing Westside's complaint.

¶ 25 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS, concur in Justice DURHAM's opinion.