IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Michael R. Murray, | ) | OPINION |
| | ) | |
| Petitioner, | ) | Case No. 20100580-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Labor Commission; Parks and | ) | (February 2, 2012) |
| Recreation; and Workers' Compensation | ) | |
| Fund, | ) | 2012 UT App 33 |
| | ) | |
| Respondents. | ) | |

-----

Original Proceeding in this Court

Attorneys:    Benjamin T. Davis, Salt Lake City, for Petitioner
              Jamison D. Ashby, Sandy, for Respondents

-----

Before Judges McHugh, Voros, and Roth.

VOROS, Associate Presiding Judge:

¶1     Petitioner Michael R. Murray seeks review of a decision of the Appeals Board of the Labor Commission (the Board) denying his workers' compensation claim due to a lack of legal causation. We decline Murray's invitation to set aside the Board's decision.


BACKGROUND

¶2     Murray was working as a park ranger for Utah State Parks and Recreation on July 13, 2008. Murray's claim for compensation arises from an incident that occurred

while he was preparing to go on boating patrol at Red Fleet State Park that day. The patrol boat was tied near the end of a dock that extended thirty-five to forty feet into the water. While standing in the patrol boat, Murray untied the boat at the bow, then moved to the stern to undo the lock that secured the remaining cable. Murray bent over the edge of the boat at a thirty-five- to forty-degree angle, holding the cable and lock in his left hand and entering the combination with his right. While Murray was in this position, an unexpected five- to six-inch wave rocked the boat, knocking Murray off balance. To steady himself, Murray adjusted his right foot, brought his right arm to the edge of the boat, and twisted his body. Murray was wearing a fifteen-pound service belt and one-pound life jacket at the time. Murray felt pain in his back when he tried to steady himself; the pain increased over the next two to three hours, causing Murray to leave work early. As the pain grew over the next several days, Murray sought medical attention.

¶3     On September 29, 2008, Murray filed a claim with the Labor Commission (the Commission). The Administrative Law Judge (the ALJ) concluded that Murray had an asymptomatic preexisting condition, "which was aggravated by the industrial accident." While the ALJ found medical causation, she concluded that Murray had not satisfied the higher standard of legal causation required when preexisting conditions are involved:

> While the wave that came up while the Petitioner was in the boat was unexpected, the evidence does not show that this caused the Petitioner to go through any unusual exertions. He lost his balance a little but did not drop the lock or fall and was able to steady himself easily.

¶4     Murray petitioned the Board to review the decision of the ALJ. The Board affirmed, explaining that "simply losing and regaining one's balance while bending over slightly, even if unexpected, is not an unusual or extraordinary exertion." Murray filed a timely petition for review in this court.

ISSUE AND STANDARD OF REVIEW

¶5     Murray contends that the Board erred in concluding that the work accident was not the legal cause of his back injury. Determining legal causation requires the Board first to determine the underlying facts of an incident, and second to apply the law to the

facts to determine whether the test for legal causation is satisfied. *See Price River Coal Co. v. Industrial Comm'n*, 731 P.2d 1079, 1082 (Utah 1986). As discussed below, the parties dispute the appropriate standard of review for an agency's application of the law.

ANALYSIS

¶6      "The Workers' Compensation Act was enacted to provide economic protection for employees who sustain injuries arising out of their employment, therefore 'alleviat[ing] hardship upon workers and their families.'" *Drake v. Industrial Comm'n*, 939 P.2d 177, 182 (Utah 1997) (alteration in original) (quoting *Baker v. Industrial Comm'n*, 17 Utah 2d 141, 405 P.2d 613, 614 (1965)). The Act limits compensation to employees who are "injured . . . by accident arising out of and in the course of the employee's employment." *See* Utah Code Ann. § 34A-2-401(1) (2011).[1] The Act is to be construed liberally, resolving any doubt as to an employee's right to compensation in favor of the employee. *See Chandler v. Industrial Comm'n*, 55 Utah 213, 184 P. 1020, 1021–22 (1919); *see also Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 16, 153 P.3d 179.

¶7      Limiting compensation to accidents "arising out of and in the course of . . . employment," *see* Utah Code Ann. § 34A-2-401(1), requires the party seeking compensation to prove both an "accident" and "a causal connection between the injury and the employment." *Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986). In this context, causation is a two-fold concept encompassing both medical causation and legal causation. *See id.* at 25. The supreme court held in *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), that a higher standard of legal causation is required when an employee has a preexisting condition and the injury involves an "internal failure." *See id.* at 23, 25–26. In such cases, the employee must show that the injury involved exertions or employment conditions that are "unusual or extraordinary" when compared to "normal, everyday life" (the *Allen* test). *See id.* at 25–26.

---

[1]Except where noted, we cite the current version of the Utah Code for the reader's convenience because the relevant portions have not changed since the events underlying Murray's petition occurred.

¶8    The parties do not dispute that an accident occurred, that Murray had a preexisting condition, or that the Board properly found medical causation. The only issue before this court is whether the heightened test for legal causation was satisfied.

I. Standard of Review

¶9    The parties dispute the appropriate standard of review. Respondents contend that the appropriate standard for reviewing an agency's application of the law to the facts is abuse of discretion, reviewing for reasonableness and rationality. *See Utah Auto Auction v. Labor Comm'n*, 2008 UT App 293, ¶ 8, 191 P.3d 1252 ("Whether the Commission erroneously applied the *Allen* test is a mixed question of law and fact reviewed for reasonableness and rationality." (citation and internal quotation marks omitted)). Murray contends that the reasonableness and rationality standard has been displaced by *Esquivel v. Labor Commission*, 2000 UT 66, 7 P.3d 777, and *Drake v. Industrial Commission*, 939 P.2d 177 (Utah 1997), and that the court of appeals, in applying the reasonableness and rationality test after *Drake* and *Esquivel*, has "stubbornly or ignorantly continued to make decisions under the wrong standard."

A. The Utah Administrative Procedures Act

¶10    "Prior to the adoption of the Utah Administrative Procedure[s] Act [UAPA], the Utah courts developed three levels of review in connection with agency action." *Morton Int'l, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581, 585 (Utah 1991), *superseded by statute with regard to the Utah State Tax Commission*, Utah Code Ann. § 59-1-610 (Supp. 1993), *as recognized in 49th St. Galleria v. Tax Comm'n*, 860 P.2d 996, 999 (Utah Ct. App. 1993). The appropriate standard of review depended upon whether the court was reviewing a question of general law, a question of agency-specific law, a question of fact, or a mixed question of law and fact. *See Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 606–12 (Utah 1983). Questions of general law were reviewed for correctness. *See id.* at 608. Questions of fact were reviewed for "evidence of any substance whatever." *See id.* at 608–09 (citation and internal quotation marks omitted). And questions of agency-specific law and mixed questions of law and fact—or questions involving the application of the law to the facts—involved an intermediate standard of review. *See id.* at 610–11. Under this intermediate standard, an agency's decisions were "entitled to weight, but . . . subject to judicial review to assure that they [fell] within the limits of reasonableness or rationality." *Id.* at 610.

¶11     UAPA provided a new framework for determining the standard of review. *See Morton Int'l*, 814 P.2d at 583–84; *Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 8, 258 P.3d 640 (mem.) ("The Utah Administrative Procedures Act (UAPA) determines the standard of review for a formal adjudicative hearing."). For judicial review of formal administrative proceedings, UAPA authorizes courts to grant relief only if "a person seeking judicial review has been substantially prejudiced" by certain agency actions, including misinterpreting or misapplying the law:

> The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
> . . . .
> (d) the agency has erroneously interpreted or applied the law; [or]
> . . . .
> (h) the agency action is:
> (i) an abuse of the discretion delegated to the agency by statute;
> (ii) contrary to a rule of the agency;
> (iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency; or
> (iv) otherwise arbitrary or capricious.

Utah Code Ann. § 63G-4-403(4) (2011). The supreme court has held that the several grounds for judicial relief set forth in what is now section 63G-4-403(4) necessarily "incorporate[] standards that appellate courts are to employ when reviewing allegations of agency error." *See Morton Int'l*, 814 P.2d at 584. However, case law discussing pre-UAPA standards of review was only displaced to the extent that it was inconsistent with UAPA. *See id.* at 585–89.

¶12     Interpreting the UAPA provision authorizing relief when "the agency has erroneously interpreted or applied the law," *see* Utah Code Ann. § 63G-4-403(4)(d), the supreme court has held that questions of law and mixed questions of law and fact are generally reviewed for correctness, granting no deference to the agency. *See Morton*

*Int'l*, 814 P.2d at 587–88 ("[T]he term 'erroneous' . . . connotes a correction-of-error standard . . . ."); *see also Esquivel*, 2000 UT 66, ¶ 14. However, under the case law, "[a]n exception to this general rule exists if the legislature has either explicitly or implicitly granted discretion to the agency" to interpret or apply the law. *Esquivel*, 2000 UT 66, ¶ 14; *see also Morton Int'l*, 814 P.2d at 584. When the statute delegates discretion to the agency, the court reviews the agency action under Utah Code section 63G-4-403(4)(h)(i), which authorizes relief when agency action constitutes "an abuse of the discretion delegated to the agency by statute." *See id.* § 63G-4-403(4)(h)(i); *see also Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶¶ 24–25, 164 P.3d 384 ("[A]gency actions are reviewed for abuse of discretion when there is an express or implied delegation within the statute."); *King v. Industrial Comm'n*, 850 P.2d 1281, 1291 (Utah Ct. App. 1993).

¶13    When reviewing agency action for an abuse of discretion, the supreme court has applied a test of reasonableness. *See LPI Servs. v. McGee*, 2009 UT 41, ¶ 7, 215 P.3d 135 ("[W]here the legislature has granted discretion to an agency to interpret the statutory provision at issue, we will affirm the agency's interpretation if it is reasonable."); *see also Westside Dixon Assocs., LLC v. Utah Power & Light Co./Pacificorp*, 2002 UT 31, ¶ 7, 44 P.3d 775 (describing intermediate review of an agency action that is "contrary to a rule of the agency," *see* Utah Code Ann. § 63G-4-403(4)(h)(ii), as a review for reasonableness and rationality). This court has applied the abuse of discretion standard using the pre-UAPA terms for intermediate review, "reasonableness and rationality." *See, e.g., Smith's Food & Drug, Inc. v. Labor Comm'n*, 2011 UT App 67, ¶ 6, 250 P.3d 1008, *cert. denied*, 255 P.3d 684 (Utah 2011) ("[W]e must uphold the Commission's determination . . . unless the determination exceeds the bounds of reasonableness and rationality so as to constitute an abuse of discretion . . . ." (omissions in original) (citation and internal quotation marks omitted)).

B. Discretion to Apply the Law

¶14    Applying the foregoing UAPA framework, this court has held that the Legislature granted the Labor Commission discretion to apply the law to the cases before it. Murray argues that this "poisonous ruling" is inconsistent with *Esquivel v. Labor Commission*, 2000 UT 66, 7 P.3d 777. Furthermore, he alleges that court of appeals precedent on this issue is inconsistent. We reaffirm our prior holdings that the Commission has discretion to apply the law.

¶15    The Labor Commission Act directs the Commission to apply the law to the cases coming before it:

> The commission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this chapter or any other title or chapter it administers.

Utah Code Ann. § 34A-1-301 (2011).  We have repeatedly held that the directive to apply the law in workers' compensation cases constitutes an express grant of authority within the meaning of UAPA case law and have thus reviewed Commission decisions for reasonableness and rationality.  *See Hunting v. Labor Comm'n*, 2012 UT App 14, ¶ 12, --- P.3d ---; *Smith's Food & Drug, Inc.*, 2011 UT App 67, ¶ 6; *Salt Lake Cnty. v. Labor Comm'n*, 2009 UT App 112, ¶ 10, 208 P.3d 1087; *Hymas v. Labor Comm'n*, 2008 UT App 471, ¶ 5, 200 P.3d 218; *Rowsell v. Labor Comm'n*, 2008 UT App 187, ¶ 8, 186 P.3d 968; *Acosta v. Labor Comm'n*, 2002 UT App 67, ¶ 11, 44 P.3d 819; *McKesson Corp. v. Labor Comm'n*, 2002 UT App 10, ¶¶ 11, 13, 25, 41 P.3d 468; *Ae Clevite v. Labor Comm'n*, 2000 UT App 35, ¶¶ 6–7, 996 P.2d 1072; *Schreiber v. Labor Comm'n*, 1999 UT App 376U, para. 3 (mem.); *Johnson Bros. Constr. v. Labor Comm'n*, 967 P.2d 1258, 1259 (Utah Ct. App. 1998); *Osman Home Improvement v. Industrial Comm'n*, 958 P.2d 240, 242–43 (Utah Ct. App. 1998); *Caporoz v. Labor Comm'n*, 945 P.2d 141, 143 (Utah Ct. App. 1997).

¶16    Our analysis of section 34A-1-301 supports the approach of these cases.  The Labor Commission Act gives the Commission not only "the full power, jurisdiction, and authority to . . . apply the law," but also the "duty" to do so.  *See* Utah Code Ann. § 34A-1-301.  The statute explicitly extends this duty and power not only to "this chapter"—the Labor Commission Act—but also to "any other title or chapter [the Commission] administers," *id.*, which includes the Workers' Compensation Act, *see id.* § 34A-1-103(1).  *See also Esquivel*, 2000 UT 66, ¶ 16 (stating that a grant of discretion must "concern[] the language in question" (citation and internal quotation marks omitted)).  Because the plain language of the statute directs the Commission to apply the Workers' Compensation Act, we interpret section 34A-1-301 as a legislative grant of discretion.  *See generally King*, 850 P.2d at 1291 ("[A] statute directing the agency to interpret or apply specific statutory language should be interpreted as an explicit grant of discretion.").

¶17    Our interpretation of section 34A-1-301 is reinforced by the history of the provision.  Before 1994, the Labor Commission Act stated, "It shall be the duty of the

commission, and it shall have full power, jurisdiction, and authority to" establish employment agencies, set standards, enforce orders, publish information, and so forth. *See* Utah Code Ann. § 35-1-16(1) (1988). The Legislature amended the statute in 1994 to authorize and direct the Commission to apply the law: "The commission has the duty and the full power, jurisdiction, and authority to determine the facts *and apply the law* in this or any other title or chapter that it administers and to" establish employment agencies, set standards, enforce orders, publish information, and so forth. *See id.* (1994) (emphasis added); Industrial Commission Authority Act, ch. 207, § 1, 1994 Utah Laws 972 (amending the Labor Commission Act effective May 2, 1994). In 1996, the Legislature amended the statute again, separating the reference to applying the law from the other general authorizing provisions—such as setting standards and enforcing orders—and placing it in the part of the chapter dealing with adjudicative proceedings, where it now appears. *See* Utah Code Ann. § 34A-1-301 & amend. notes (1997) (current version at *id.* (2011)); Department of Workforce Services Act, ch. 240, §§ 181, 376, 1996 Utah Laws 969, 1076 (renumbering and amending the provision in question effective July 1, 1997).

¶18     In arguing that our case law is inconsistent, Murray points to a number of cases where this court has held that the Commission does not have discretion to apply the law. However, most of these cases were decided before the 1994 statutory amendment expressly bestowed this power on the Commission. *See Walls v. Industrial Comm'n*, 857 P.2d 964, 966–67 (Utah Ct. App. 1993) (pre-amendment case finding no grant of discretion to the Commission); *Employers' Reinsurance Fund v. Industrial Comm'n*, 856 P.2d 648, 655 (Utah Ct. App. 1993) (Billings, P.J., and Russon, J., concurring in result) (same); *King v. Industrial Comm'n*, 850 P.2d 1281, 1291–92 (Utah Ct. App. 1993) (same); *Stokes v. Board of Review of Indus. Comm'n*, 832 P.2d 56, 58–59 (Utah Ct. App. 1992) (same); *Cross v. Board of Review of Indus. Comm'n*, 824 P.2d 1202, 1204 (Utah Ct. App. 1992) (same); *see also Smallwood v. Board of Review of Indus. Comm'n*, 841 P.2d 716, 718–19 (Utah Ct. App. 1992) (applying correction-of-error standard without discussing discretion).[2]

---

[2]In *Commercial Carriers v. Industrial Commission*, 888 P.2d 707 (Utah Ct. App. 1994), the court followed the pre-amendment line of cases. *See id.* at 710. Although the case was decided after the amendment went into effect, the court did not address the amendment and it is not clear which version of the Labor Commission Act was in force when the Commission initially decided the case.

¶19     A few cases decided after the 1994 amendment follow the pre-amendment line of cases in finding no grant of discretion. Yet these cases generally address discretion to interpret the law rather than discretion to apply it. *See Wood v. Labor Comm'n*, 2005 UT App 490, ¶¶ 6–7, 128 P.3d 41 (stating that the Commission had no discretion to interpret or apply the law under the Utah Occupational Disease Act, but reviewing only the Commission's interpretation of the act); *Helf v. Industrial Comm'n*, 901 P.2d 1024, 1025–26 (Utah Ct. App. 1995) (finding no discretion to interpret the law but reviewing application of the law for reasonableness and rationality). The few post-1994 amendment cases that apply a correction-of-error standard to the Commission's application of the law do not address the language of the Labor Commission Act. *See Buczynski v. Industrial Comm'n*, 934 P.2d 1169, 1172 (Utah Ct. App. 1997) (following the standard of review set forth in pre-amendment cases without any discussion of Commission discretion); *Crapo v. Industrial Comm'n*, 922 P.2d 39, 41 (Utah Ct. App. 1996) (finding no discretion to apply the law under the Workers' Compensation Act, but not addressing the impact of the Labor Commission Act on the analysis). In light of the silence of these cases as to the Labor Commission Act, we previously have held on this very issue that we are "not bound, under principles of horizontal stare decisis, to apply the less deferential correction-of-error standard." *See Caporoz*, 945 P.2d at 143 (citing *State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994)); *see also Osman Home Improvement*, 958 P.2d at 242–43 (discussing the significance of *Caporoz* as the first case to consider the impact of the 1994 amendment on a UAPA analysis).

¶20     Murray argues that our reading of the Labor Commission Act is inconsistent with *Esquivel v. Labor Commission*, 2000 UT 66, 7 P.3d 777. We disagree. In *Esquivel*, the supreme court reviewed section 34A-1-301 to determine whether it granted the Commission discretion to interpret the law. *See id.* ¶¶ 12–18. The court held that section 34A-1-301 did not provide "a general grant of discretion to the Labor Commission *for statutory interpretation*." *Id.* ¶ 18 (emphasis added); *see also LPI Servs. v. McGee*, 2009 UT 41, ¶ 10, 215 P.3d 135 (noting absence of explicit Commission discretion *to interpret* a particular provision of Workers' Compensation Act). Yet this limitation on the Commission's discretion to *interpret* the law does not extend to its discretion to *apply* the law. *See Esquivel*, 2000 UT 66, ¶¶ 17–18 (framing discussion in terms of interpretation). In *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, 164 P.3d 384, the supreme court rejected an argument that a particular provision of the Workers' Compensation Act granted the Commission discretion to interpret the law. *See id.* ¶¶ 41–42. The court held that the provision in question granted the Commission authority only to apply the law, noting that this

conclusion was "consistent with the legislature's more general delegation of authority to the Commission found in Utah Code section 34A-1-301." *Id.* ¶¶ 42–43.

¶21    Murray has not convinced us to overturn our extensive—and largely consistent—precedent on the issue. Given the language of the Labor Commission Act and the clear weight of this court's precedent, we reaffirm that section 34A-1-301 explicitly gives the Commission discretion to apply the law to the cases before it, including those involving the Workers' Compensation Act and the "arising out of" provision of section 34A-2-401(1).

C.   *Drake v. Industrial Commission*

¶22    Murray next argues that *Drake v. Industrial Commission*, 939 P.2d 177 (Utah 1997), displaced the UAPA framework. We do not read *Drake* so broadly.

¶23    *Drake* involved a challenge to the Labor Commission's application of the "special errand" rule in a workers' compensation case to determine whether a car accident arose "out of and in the course of" employment within the meaning of what is now Utah Code section 34A-2-401. *See Drake*, 939 P.2d at 180. The supreme court's standard of review analysis did not focus on UAPA. Instead, drawing on criminal cases, the court stated that an "agency's application of the law to the facts may, depending on the issue, be reviewed by an appellate court with varying degrees of strictness, falling anywhere between a review for 'correctness' and a broad 'abuse of discretion' standard." *Id.* at 181 (citation and internal quotation marks omitted). The court turned to *State v. Pena*, 869 P.2d 932 (Utah 1994), to determine the degree of deference it would apply in *Drake*. *See Drake*, 939 P.2d at 181–82. To determine the standard of review for a trial court's application of the law in criminal cases, a *Pena* analysis involves a balancing of the factual complexity of the legal standard at issue, the reliance of the legal standard on facts observed by the fact finder, and other policy considerations. *See State v. Levin*, 2006 UT 50, ¶ 25, 144 P.3d 1096 (announcing a modification of the *Pena* analysis).

¶24    Therefore, in *Drake*, the court relied on the "highly fact-sensitive" nature of "special errand" cases, the court's sparse precedent on the issue, and the policy of ensuring a liberal construction of the Workers' Compensation Act. *See Drake*, 939 P.2d at 181–82. In light of these factors, the court concluded that the "special errand" rule "'conveys a measure of discretion to [the Commission] when applying that standard to a given set of facts.'" *Id.* at 182 (quoting *Pena*, 869 P.2d at 939). Whether this measure was a millimeter or a mile was left unstated. The court simply said that it was

"disposed to give heightened deference to the Commission" while exercising "some scrutiny." *See id.* Murray thus argues that *Drake* requires a *Pena* analysis to determine the standard of review for an agency's application of the law.

¶25    We do not believe that *Drake* intended to displace the supreme court's considered and significant precedent on UAPA standards of review. *See Osman Home Improvement v. Industrial Comm'n*, 958 P.2d 240, 243 n.4 (Utah Ct. App. 1998) ("[N]othing in *Drake* indicates an intention by the court to displace its own precedent on [the standard of review when a statute explicitly grants an agency discretion] . . . ."). Nor do we believe that *Drake* requires the application of a *Pena* analysis to determine the standard of review for formal administrative proceedings. In *Westside Dixon Associates, LLC v. Utah Power & Light Co./Pacificorp*, 2002 UT 31, 44 P.3d 775, the supreme court disclaimed any relevance that *Drake* might have to UAPA standard-of-review cases: "We note that all parties to this petition cite *Drake v. Industrial Comm'n*, 939 P.2d 177 (Utah 1997), regarding appropriate agency standards of review. We note that *Drake* was not a UAPA case, an observation that applies to *State v. Pena*, 869 P.2d 932 (Utah 1994), as well." *Westside Dixon*, 2002 UT 31, ¶ 8 n.1. We understand *Westside Dixon* as a retreat from any implication in *Drake* that *Pena* should replace the supreme court's ordinary standards of review governing UAPA cases.[3]

¶26    Nevertheless, we agree that *Drake*'s emphasis on liberally construing the Workers' Compensation Act in favor of coverage remains relevant. Although we have occasionally failed to expressly consider this policy, *see, e.g.*, *Acosta v. Labor Comm'n*, 2002 UT App 67, 44 P.3d 819, we believe *Drake* and other cases require us to do so when reviewing the Commission's application of the Workers' Compensation Act. *Cf. Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 611 (Utah 1983) ("[R]easonableness must be determined with reference to the specific terms of the underlying legislation, interpreted in light of its evident purpose as revealed in the legislative history and in light of the public policy sought to be served.").

---

[3]Notwithstanding the explicit statement in *Westside Dixon,* the supreme court appears to have later applied *Drake*'s "conditionally deferential standard of review" in *Salt Lake City Corp. v. Labor Commission*, 2007 UT 4, 153 P.3d 179. *See Salt Lake City Corp.*, 2007 UT 4, ¶ 15 (addressing the going-and-coming rule, a "cousin" of the special errand rule addressed in *Drake*). However, in *Salt Lake City Corp.*, the court did not cite to *Westside Dixon* or discuss *Westside Dixon*'s gloss on *Drake.* We therefore do not understand the supreme court to have jettisoned *Westside Dixon* on this point.

¶27   In sum, because the Legislature has expressly granted the Commission discretion to apply the law, we review the Commission's application of the legal causation test for an abuse of discretion, applying a test of reasonableness and rationality.  In determining whether the Commission's application of the law is reasonable, we must "look closely to assure ourselves that the Commission has liberally construed and applied the [Workers' Compensation] Act to provide coverage and has resolved any doubt respecting the right to compensation in favor of an injured employee." *See Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 16, 153 P.3d 179.

## II.  Legal Causation

¶28   "The language 'arising out of [and] in the course of . . . employment' found in [Utah Code section 34A-2-401(1)] was apparently intended to ensure that compensation is only awarded where there is a sufficient causal connection between the disability and the working conditions." *Allen v. Industrial Comm'n*, 729 P.2d 15, 24–25 (Utah 1986).  To establish causation, a claimant must prove both medical causation and legal causation. *Id.* at 25.  "This requirement of causation is necessary to prevent an employer from becoming the insurer of all its employees for injuries which just coincidentally happen at work without any connection with work conditions or activity." *Specialty Cabinet Co. v. Montoya*, 734 P.2d 437, 440 (Utah 1986).

¶29   A more restrictive test for legal causation is imposed when an employee has a preexisting condition that may have contributed to the injury. *See Allen*, 729 P.2d at 23, 26 ("Because of the difficulties of diagnosis of internal failures and because of the possibility that a preexisting condition may have contributed to the injury, special causation rules have been developed for internal failure cases."); *Price River Coal Co. v. Industrial Comm'n*, 731 P.2d 1079, 1082 (Utah 1986).  "'[T]he object is to distinguish work-connected collapses from those that are due to normal progression of a disease.'" *Acosta*, 2002 UT App 67, ¶ 23 (quoting Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 46.03[4], at 46-18 (2001)).  Thus, an injury is not compensable when it "occur[s] at work because a preexisting condition results in symptoms which appear during work hours without any enhancement from the workplace," but it is compensable when it "occur[s] because some condition or exertion required by the employment increases the risk of injury which the worker normally faces in his everyday life." *Allen*, 729 P.2d at 25.

¶30   "To meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to

increase the risk he already faced in everyday life because of his condition." *Id.* This is usually accomplished by showing that the injury was precipitated by an "unusual or extraordinary exertion" "greater than that undertaken in normal, everyday life." *Id.* at 25–26; *see also Price River Coal*, 731 P.2d at 1082 (stating that the "unusual or extraordinary exertion" requirement is "designed to screen out those injuries that result from a personal condition which the worker brings to the job, rather than from exertions required of the employee in the workplace").

¶31    The test for what is "unusual" is an objective test, based on "what typical nonemployment activities are generally expected of people in today's society." *Allen*, 729 P.2d at 26. These include "taking full garbage cans to the street, lifting and carrying baggage for travel, changing a flat tire on an automobile, lifting a small child to chest height, and climbing the stairs in buildings." *Id.* If a finding of unusual or extraordinary conditions or exertions is made, "then the requirement of legal cause is satisfied because it is presumed that the employment increased the risk of injury to which that worker was otherwise subject in his nonemployment life." *Price River Coal*, 731 P.2d at 1082.

¶32    Here, the ALJ determined that "the evidence does not show that [the unexpected wave] caused the Petitioner to go through any unusual exertions. He lost his balance a little but did not drop the lock or fall and was able to steady himself easily." The Board agreed with this determination, finding that "simply losing and regaining one's balance while bending over slightly, even if unexpected, is not an unusual or extraordinary exertion."

¶33    Murray challenges these findings by making three arguments. First, he argues that the awkward and unusual position of his body at the time of the accident would render unusual any exertions required to steady himself when the wave came. Second, he argues that the circumstances surrounding the accident were unusual. *See generally Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986) (limiting compensation in the case of preexisting conditions to "injuries which occur because some *condition* or exertion required by the employment increases the risk of injury which the worker normally faces in his everyday life" (emphasis added)). Third, he argues that the mechanism that caused the injury was the combination of an external force and

Murray's physical exertion; the physical exertion was rendered unusual by the external force to which it was a response.[4]

¶34    Respondents reply that the circumstances Murray faced and the resulting exertions are comparable to several everyday situations: leaning over to reach a handhold while standing on a bus or transit train, carrying baggage on a moving sidewalk or escalator, or washing one's hands in an airplane lavatory when the aircraft hits mild turbulence.

¶35    We conclude that the Board's determination was reasonable. While people typically would not face Murray's exact scenario in everyday life, it is similar to the activities and exertions common to everyday life. Murray stood in an awkward position on an unsteady surface, leaning over to unlock a cable while wearing a fifteen-pound service belt and one-pound life jacket. When an unexpected wave threw him off balance, he shifted his weight and twisted his body, placing an arm on the side of the boat to steady himself. Looking at Murray's exertion as well as the working conditions that Murray faced at the time of the accident—including the outside force to which Murray reacted—we find nothing unusual or extraordinary when compared to everyday life.

¶36    It is not unusual to stand on an unsteady platform, such as an airplane, bus, transit train, elevator, or escalator, where an outside force can require some exertion to maintain or regain one's balance. Such exertions are often necessary even when standing on solid ground and someone or something knocks a person off balance. *See Schreiber v. Labor Comm'n*, 1999 UT App 376U, para. 4 (mem.) (agreeing with the Commission that a claimant's reaction to being struck by a rubber ball on a playground was not unusual). It is not unusual to lean over thirty-five to forty degrees, in an awkward position, to accomplish some task, even while burdened with additional weight. *Cf. Allen*, 729 P.2d at 26 ("Typical activities and exertions . . . include taking full garbage cans to the street, lifting and carrying baggage for travel, . . . [and] lifting a small child to chest height . . . ."); *Smith & Edwards Co. v. Industrial Comm'n*, 770 P.2d 1016, 1017–18 (Utah Ct. App. 1989) (holding that weight alone did not render a scenario unusual when an employee was required to lift a few forty-seven-and-a-half-pound

---

[4]Murray also challenges the ALJ's and Board's determination that he "easily steadied himself" after losing his balance. Even assuming this characterization is inaccurate, we reach the same conclusion as to legal causation.

boxes from "ten to fifteen inches off the floor, turn ninety degrees, and place the box[es] on a pallet").

¶37    Combining these various factors does not change the result.  We agree that the totality of circumstances is relevant to a legal causation analysis.  *See American Roofing Co. v. Industrial Comm'n*, 752 P.2d 912, 915 (Utah Ct. App. 1988); *Smith & Edwards*, 770 P.2d at 1018.  However, we do not believe that this combination of conditions and exertions rendered Murray's situation unusual or extraordinary.  It is easy to imagine similar situations common to everyday life, such as standing on a crowded bus or transit train on the way to work or school while wearing a backpack and leaning over to reach a handhold when the vehicle hits an unexpected bump.

¶38    We find nothing doubtful about the nature of the conditions and exertions involved that would lead us to reach a different conclusion.  The task Murray was performing was not "unusually arduous" or any more "physically demanding" than common tasks performed in everyday life.  *Cf. Chase v. Industrial Comm'n*, 872 P.2d 475, 476, 478 n.5 (Utah Ct. App. 1994) (holding that a machinist's work was "physically demanding and often involved considerable exertion of the arms and shoulders" and was therefore "unusually arduous when compared to the everyday activities of the average person").  Even viewed as a whole, the conditions and exertions entailed nothing unusual or extraordinary that could be presumed to have contributed something substantial to increase the risk of injury.

¶39    Therefore, we find the Board's determination to be reasonable, even when viewed in light of the policy of the Workers' Compensation Act of resolving doubts "in favor of the injured employee," *see Drake v. Industrial Comm'n*, 939 P.2d 177, 182 (Utah 1997) (citation and internal quotation marks omitted).

CONCLUSION

¶40    We review an agency's application of the law for correctness unless there is an explicit or implicit grant of discretion in the statute.  Because the Labor Commission Act explicitly directs the Commission to apply the Workers' Compensation Act, we review the Board's application of the law for an abuse of discretion.  When reviewing for abuse of discretion, we review for reasonableness and rationality in light of the text and policy of the statute in question.  Rather than displacing this settled framework, *Drake* simply requires our review to include an increased emphasis on the policy of the Workers'

Compensation Act of resolving doubts in favor of the employee. Applying this standard of review, we conclude that, even resolving doubts in favor of Murray, the Board's determination that Murray could not establish legal causation because his accident did not involve unusual or extraordinary conditions or exertions was reasonable.

¶41 Therefore, we decline to disturb the Board's decision.


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


-----

¶42 WE CONCUR:


_____
Carolyn B. McHugh,
Presiding Judge


_____
Stephen L. Roth, Judge