2013 UT App 73

# THE UTAH COURT OF APPEALS

JEFFREY C. KENDELL,

*Petitioner,*

*v.*

DEPARTMENT OF WORKFORCE SERVICES,
WORKFORCE APPEALS BOARD,

*Respondent.*

Memorandum Decision
No. 20111105-CA
Filed March 21, 2013

Original Proceeding in this Court

Jeffrey C. Kendell, Petitioner Pro Se
Suzan Pixton, Attorney for Respondent

JUDGE CAROLYN B. MCHUGH authored this
Memorandum Decision, in which JUDGES WILLIAM A. THORNE JR.
and STEPHEN L. ROTH concurred.

McHUGH, Judge:

¶1 Petitioner Jeffrey C. Kendell seeks judicial review of orders of the Workforce Appeals Board (the Board) concluding that he was ineligible to receive unemployment benefits while out of the country and imposing an overpayment and civil penalty for fraud. We set aside the Board's decision and direct the Board to reconsider its decision consistent with this decision.

¶2 Kendell first began filing claims for unemployment insurance benefits on April 15, 2010. On July 15, 2010, Kendell

traveled to Europe and remained there through August 22, 2010. Kendell testified that he traveled to Germany to apply for a specific job, even though he was aware that he was not authorized to work in that country. While in Germany, Kendell visited Italy and Spain, but testified that these trips were for vacation purposes only.

¶3     When Kendell first applied for unemployment benefits, the Department of Workforce Services (the Department) sent him the Claimant Guide: Unemployment Insurance Benefits (the Claimant Guide), which provided instructions regarding a claimant's responsibility to be able and available for work while receiving unemployment benefits, including the requirements a claimant must fulfill when filing for benefits outside of the state. The Claimant Guide instructs, "You must be physically and mentally able to work full-time." It then explains, "You are required to report [that] you are not available for work when any condition exists that could prevent you from working, accepting work or seeking full-time work. This includes, but is not limited to: travel . . . ." Of particular importance to this petition for review, the Claimant Guide provides, in relevant part:

> Out-of-State Filing
>
> . . . .
>
> You are required to notify the Claims Center if you travel or move to a location outside the United States. Depending on the circumstances, travel or relocation to a foreign country could affect your continued eligibility for unemployment benefits.

¶4     Kendell testified that he read and understood the Claimant Guide and that he was aware of the provisions stating that travel to a foreign country could affect his eligibility for unemployment benefits. Kendell also acknowledged that he was required to report to the Department any condition or situation which could prevent him from accepting work, including travel, and that he was

required to notify the Department if he traveled to a location outside the United States. At no point, however, did Kendell notify the Department that he traveled to Europe.

¶5      While abroad, Kendell filed for benefits from July 17, 2010, through August 21, 2010. For each week that Kendell applied for benefits, he was required to answer the following question: "During the week, were you physically able to work and available for full-time work?" On each occasion, Kendell responded, "Yes."

¶6      On July 6, 2011, the Department sent Kendell a "Notice of Issue," informing him that "a question exists concerning your unemployment benefits." The notice also warned him of a potential overpayment penalty for the weeks from July 17, 2010, through August 21, 2010—the period Kendell filed for unemployment benefits while he was in Europe.

¶7      After receiving the notice, Kendell spoke with a Department investigator on July 11, 2011. The next day, the Department issued a decision concluding that because Kendell was not available for full-time employment due to his travel in a foreign country that lacked a reciprocal unemployment agreement with the United States, he was ineligible to receive unemployment benefits during that time. *See* Utah Code Ann. § 35A-4-403(1)(c) (LexisNexis Supp. 2012)[1] (stating that an unemployed individual is eligible to receive benefits only if that individual "is able to work and is available for work"). *See generally id*. § 35A-4-106(4) (2011) (granting the Department authority to enter into a reciprocal agreement for unemployment benefits with a foreign government).

¶8      Kendell filed an administrative appeal of that decision. Representing himself at a telephone hearing before an

---

1. Because the 2012 amendments to the statute do not affect our analysis, we cite the current version of the Utah Code for the reader's convenience.

Administrative Law Judge (ALJ) on August 10, 2011, Kendell argued that he was always available for work, as evidenced by the fact that he had continued to make the requisite number of job contacts during his time in Europe.[2] Kendell asserted that he was available by cellular telephone and email, and that he had sufficient airline miles to obtain a flexible return ticket that would have allowed him to return to the United States within twenty-four hours.

¶9 After the evidentiary hearing, the ALJ issued two decisions. First, the ALJ concluded that Kendell was not available for full-time work during the period he was in Europe because

> he was [traveling] in foreign countries which [did] not have a reciprocal agreement with the United States concerning the payment of unemployment benefits. [Kendell] did not have permission to work in any of these countries, and his availability was limited by the time necessary to return to the United States if he were offered employment.

As a result, the ALJ denied Kendell employment benefits for the weeks ending July 17, 2010, through August 21, 2010. In the second decision, the ALJ determined that Kendell should be assessed a fraud penalty because he "willfully made a false statement or misrepresentation or knowingly failed to report a material fact to obtain" benefits while traveling in Europe. Specifically, the ALJ concluded that Kendell knew he was required to notify the Department if he traveled outside of the United States, but failed to do so. In reaching this conclusion, the ALJ reasoned,

---

2. In addition to testifying that he applied to work for one company located in Germany during his trip, Kendell provided a detailed list of employment contacts that indicated he had filed two job applications for each of the six weeks at issue in this appeal. The Board does not challenge this evidence.

It is unclear how [Kendell] failed to understand how his being in Europe interfered with his immediate availability for full-time work. For [Kendell] to accept employment, it would be necessary to incur the high costs of adjusting the return date of a flight to the United States. Moreover, [Kendell's] availability would be delayed by the travel time involved if it were necessary to return to the United States to accept an offer of work.

The element of willfulness has been established. [Kendell] filed unemployment claims affirming his availability for employment when traveling in a foreign country clearly limited his availability to return to work.

As a result, the ALJ's decision established an overpayment in the amount of $2,070 for benefits received, as well as a civil penalty of $2,070, for a total overpayment of $4,140. The ALJ also disqualified Kendell from receiving benefits for forty-three additional weeks.

¶10    Kendell appealed the ALJ's decisions to the Board. In his appeal, Kendell provided additional evidence indicating that he "had enough [airline] miles to redeem for a one way ticket back to the United States at any time" without incurring any additional expenses. On October 13, 2011, the Board issued its decision adopting the ALJ's findings and affirming the ALJ's decisions in their entirety. In its reasoning and conclusions of law, the Board noted,

Traveling outside of the United States or Canada immediately renders a claimant ineligible for benefits unless the purpose of the trip is to seek, apply for, or accept work in a country where the claimant is eligible to work and the trip is less than two weeks. Unemployment benefits are not intended to

subsidize vacations, or other travel outside the
United States.

Contrary to the ALJ's ruling, however, the Board indicated that
"[Kendell] did conduct a work search while in Europe and could
have returned immediately." Nevertheless, the Board concluded,

> under the law and the rules[, Kendell] is not
> considered to be able and available for work when he
> was outside of the United States. [Kendell] was out
> of the country for more than two weeks, and was not
> looking for work in countries where he had work
> authorization. Furthermore[,] none of the countries
> [Kendell] traveled to have a reciprocal agreement
> with the United States. [Kendell] was not able and
> available for full-time work when he was outside of
> the United States.

Kendell requested reconsideration on November 1, 2011, which the
Board denied. Kendell now petitions this court for review of the
Board's decision.

¶11    Kendell first challenges the Board's decision that he was not
eligible for unemployment benefits while he was in Europe on the
ground that the Board misinterpreted the controlling
administrative rule. We apply an intermediate standard of review
to an agency's interpretation of its own rules, "deferring to an
agency's interpretation as long as it is both reasonable and
rational." *Westside Dixon Assocs. LLC v. Utah Power & Light
Co./PacifiCorp*, 2002 UT 31, ¶ 7, 44 P.3d 775. Our determination of
reasonableness is guided by the fundamental principle that an
agency's rules "must be construed in a manner consistent with the
statute . . . ." *SF Phosphates Ltd. v. Auditing Div., Utah State Tax
Comm'n*, 972 P.2d 384, 386 (Utah 1998).

¶12    Kendell also challenges the Board's decision to impose a
fraud penalty, arguing that it was based on a misconstruction and

misapplication of the underlying statute and is not supported by substantial evidence. "An agency's interpretation and application of law is generally reviewed for correctness, but when the [Utah] Legislature has granted the agency discretion to interpret or apply the law, we apply an intermediate standard of review." *Dorsey v. Department of Workforce Servs.*, 2012 UT App 364, ¶ 9, 294 P.3d 580. "When we review an agency's application of the law to a particular set of facts, we will review the agency's decision with only moderate deference. Thus, we will uphold [the Board's] decision so long as it is within the realm of reasonableness and rationality." *Carbon Cnty. v. Department of Workforce Servs.*, 2012 UT App 4, ¶ 12, 269 P.3d 969 (alteration in original) (citations and internal quotation marks omitted), *cert. granted*, 280 P.3d 421 (Utah 2012).

¶13    Kendell argues that he was available for work while traveling in Europe as required by Utah Code section 35A-4-403. *See* Utah Code Ann. § 35A-4-403(1)(c) (LexisNexis Supp. 2012) (stating that an unemployed individual is eligible to receive benefits only if that individual "is able to work and is available for work"). The Board's determination that Kendell was unavailable primarily rested on its interpretation of administrative rule R994-403-112c, which addresses foreign travel as a factor affecting a claimant's availability. The rule states, in relevant part,

> a claimant who is engaged in an activity for more than half the normal workweek that would prevent the claimant from working, is presumed to be unavailable and therefore ineligible for benefits. . . . When a claimant is away from his or her residence but has made arrangements to be contacted and can return quickly enough to respond to any opportunity for work, the presumption of unavailability may be overcome.
>
> . . . .

> Unemployment benefits cannot be paid to a claimant located in a foreign country unless the claimant has authorization to work there and there is a reciprocal agreement concerning the payment of unemployment benefits with that foreign country. An exception to this general rule is that a claimant who travels to a foreign country for the express purpose of applying for employment and is out of the United States for two consecutive weeks or less is eligible for those weeks provided the claimant can prove he or she has a legal right to work in that country. A claimant who is out of the United States for more than two weeks is not eligible for benefits for any of the weeks.

Utah Admin. Code Ann. R994-403-112c(2) (LexisNexis 2010).[3] Based on this rule, the Board denied benefits to Kendell because he was in Europe for more than two weeks and did not have authorization to work in any country there. Additionally, the Board determined Kendell was ineligible for benefits because none of the countries he traveled to had a reciprocal agreement with the United States.

¶14    After briefing was completed, this court issued a decision in *Dorsey v. Department of Workforce Services*, 2012 UT App 364, 294 P.3d 580, rejecting the Board's interpretation of rule R994-403-112c as "impos[ing] a disability not mentioned in the statute,

---

3. The agency has since revised this rule, removing the reference to foreign travel for two weeks or less, *see* Utah Admin. Code Ann. R994-403-112c(2)(a)(i)(B) (LexisNexis Supp. 2012), and adding a subsection to address reporting requirements for travel outside of the United States, *see id.* R994-403-112c(2)(a)(i)(C). Unless otherwise noted, we cite the 2010 version of the Utah Administrative Code, which reflects the version in effect at the time Kendell filed for benefits.

impermissibly restricting the meaning of the availability requirement, and thus . . . not 'in harmony' with the statute." *Id.* ¶¶ 19–22. In making this determination, the *Dorsey* court held that

> the touchstone of rule R994-403-112c(2)(a), as with section 35A-4-403(1)(c), is availability. Foreign and domestic travel are relevant to the determination of availability, but are not grounds for denying eligibility to a traveler who demonstrates, as [c]laimant has, that he is able to work and is available for work during each and every week for which [he] made a claim for benefits under this chapter. Thus, with foreign travel, the presumption of unavailability in rule R994-403-112c(2)(a) may be overcome not only by showing that the claimant was seeking work in a foreign country under the conditions specified in rule R994-403-112c(2)(a)(i), but also by showing that the claimant made arrangements to be contacted and could return quickly enough to respond to any opportunity for work.

*Id.* ¶ 23 (second alteration in original) (footnote, citations, and internal quotation marks omitted).

¶15 Because *Dorsey*'s holding is controlling here, we asked the parties to submit supplemental briefing to address its impact. Those briefs each stressed different aspects of the evidentiary record in an attempt to distinguish or follow *Dorsey*'s conclusion that the claimant there had proved availability. However, unlike in *Dorsey*, the Board here never addressed the issue of whether Kendell could have returned from Europe quickly enough to respond to any opportunity for work and thereby overcome the presumption of unavailability created by his absence from the United States.

¶16 Indeed, there does not appear to be any focus on or analysis of this issue in the decisions of the ALJ and the Board. In its

determination that Kendell was not able and available for work, the ALJ primarily relied on Kendell's travel to foreign countries, where he did not have permission to work and which lacked reciprocal agreements with the United States. And although Kendell testified that he "was available to fly back . . . on a moment[']s notice," the ALJ appeared to reject this assertion when it concluded that Kendell should have known that his "availability would be delayed by the travel time involved if it were necessary to return to the United States to accept an offer of work" and "the high costs of adjusting the return date of a flight to the United States." In contrast, and despite the Board having "adopt[ed] in full the factual findings" of the ALJ and having "affirmed and adopted in full" the ALJ's ultimate decisions, the Board's reasoning states that Kendell "could have returned immediately." The lack of any discussion or analysis, combined with its seemingly inconsistent adoption of the ALJ's decision, suggests that the Board was making an assumption for the purposes of argument, rather than making a factual determination regarding Kendell's ultimate availability. Essentially, the Board held that even if Kendell could be immediately available for work, R994-403-112c dictated that he was not available for purposes of unemployment benefit eligibility simply because he was out of the country.

¶17    Given the Board's erroneous interpretation of rule R994-403-112c, which has now been rejected by *Dorsey*, we must set aside the Board's decision. We therefore direct the Board to reconsider whether Kendell was able and available for work in light of our decision in *Dorsey*.

———————